**BROOKSHIRE BROTHERS, INC., Appellant,**

v.

**Talbert WAGNON, Appellee.**

No. 12–97–00179–CV.

Court of Appeals of Texas, Tyler.

Aug. 26, 1998.

Rehearing Overruled Oct. 30, 1998.

---

**2.** Neither the United States Supreme Court nor the Texas Supreme Court has adopted this test.

Curtis W. Fenley, III, Lufkin, for appellant.

Jim Ammerman, III, Marshall, for appellee.

Before HOLCOMB and HADDEN, JJ., and BASS, Retired Justice, Twelfth Court of Appeals, TYLER, sitting by assignment.

HOLCOMB, Justice.

Brookshire Brothers, Inc. ("Brookshire") files this appeal complaining of a judgment rendered for Talbert Wagnon ("Wagnon"). This worker's compensation nonsubscriber case was tried to a jury on two occasions. The first verdict was for Brookshire on a finding of no negligence. The trial court granted Wagnon's motion for new trial, and the second jury found for Wagnon and awarded him $750,000 .00 in damages. Brookshire files ten points of error. We will affirm.

Brookshire employed Wagnon as a butcher at its Carthage, Texas store. On the day of the injury, a delivery truck arrived with merchandise for the store. After the truck left, Wagnon and two other employees unloaded the pallets. The truck later returned with another pallet containing meat for the meat market. Wagnon unloaded the meat from this pallet by himself. The injury to his back occurred when he lifted a heavy box of meat (approximately 80 pounds), which was located on the pallet close to the floor, then twisted his body to place it on the top shelf of a cart. This cart was used to haul the meat to the cooler. Wagnon claimed at trial that Brookshire did not provide him with a safe workplace, since the boxes he was required to lift were too heavy to be lifted without help. He also maintained that Brookshire was aware of the dangers involved, since other workers had been similarly injured.

■ In its first point of error, Brookshire complains that the trial court erred in granting Wagnon's motion for new trial. It is well-settled Texas law, however, that an order granting a timely-filed motion for new trial is not subject to review on appeal. *Hayden v. American Honda Motor Co.*, 835 S.W.2d 652, 654 (Tex.App.—Tyler 1992, no writ). We overrule Brookshire's first point of error.

In its second point of error, Brookshire asserts that the trial court erred in denying its requested special issue on comparative causation. It cites *Texas Workers' Compensation Comm'n. v. Garcia*, 893 S.W.2d 504, 521 (Tex.1995) for the proposition that an injured employee in a nonsubscriber case must prove that he or she was not more than 50% negligent in causing the injury. We disagree that *Garcia* is determinative of this issue, however, because the dispute before the Supreme Court of Texas was the constitutionality of the Worker's Compensation Act. The language was not essential to the outcome of the case, nor did comparative negligence constitute even a minor issue in that case. The brief statement that an employee cannot recover if he is more than 50% negligent was clearly dicta and noncontrolling.

■ In an action against a nonsubscriber, it is not a defense 1) that the employee was guilty of contributory negligence; 2) that the employee assumed the risk of injury or death; or 3) that the injury or death was caused by the negligence of a fellow employee. TEX.LAB.CODE ANN. § 406.033 (Vernon 1996). The employer may only defend the action on the ground that the injury was caused by an act of the employee intended to bring about the injury or while the employee was in a state of intoxication. *Id.* In other words, the employer's only defense may be that it was not negligent in causing the injury or that its employee was the sole proximate cause of the injury. *Holiday Hills Retirement and Nursing Center, Inc. v. Yeldell*, 686 S.W.2d 770, 775 (Tex.App.—Fort Worth 1985), *rev'd on other grounds*, 701 S.W.2d 243 (Tex.1985). The Worker's Compensation Act clearly seeks to exclude from jury consideration any issue submitting an employee's fault, negligence, or responsibility, other than sole proximate cause. We hold that in an employee's suit against a nonsubscribing employer, comparative negligence is not applicable and should not be submitted to the jury. *See Id.* We overrule point of error two.

In its third point of error, Brookshire argues that the trial court erred in admitting evidence of unrelated prior acts to establish prior knowledge or foreseeability. At trial, Robert Jones ("Jones"), Charlotte Abernathy ("Abernathy") and Patricia Moore ("Moore") all testified regarding their claims of injuries and accidents on the job. In addition, Wagnon's expert testified concerning Jones, Abernathy and Moore's injuries as a prelude to his opinion that Brookshire was negligent when Wagnon was injured. Brookshire maintains that none of the injuries occurred in substantially similar circumstances as Wagnon's, and were therefore irrelevant. In addition, the injuries occurred prior to 1990 when Brookshire became a nonsubscriber and instituted a new training and safety program.

■ Relevant evidence is generally admissible. Tex.R.Civ.Evid. 402. The relevance, and therefore the admissibility, of other accidents or similar events is determined by: 1) a predicate of "similar" or "reasonably similar" conditions; 2) connection of the conditions in some "special way"; and 3) that the incidents occurred by means of the same instrumentality. *Winn–Dixie Texas, Inc. v. Buck,* 719 S.W.2d 251, 254 (Tex.App.—Fort Worth 1986, no writ), *overruled on other grounds, Greenhalgh v. Service Lloyds Ins. Co.,* 787 S.W.2d 938, 940 (Tex.1990). Admitting evidence is a matter within the discretion of the trial court. *Tracy v. Annie's Attic, Inc.,* 840 S.W.2d 527, 531 (Tex.App.—Tyler 1992, writ denied).

■ In the instant case, Wagnon was injured in the meat market when he lifted a heavy box of meat above his head and twisted his body to place the box on the unicart. Abernathy hurt herself when she lifted a heavy tray of meat and twisted her body in the process of setting it down. Jones hurt himself when he was required to pick up from the floor a plastic tub filled with meat, lift it up to his chest, push it away from his body and dump the meat upside down into a grinder. He had to twist his body in the process of lifting and dumping. Because the prior injuries of these other employees involved lifting heavy objects while incorporating a twisting motion, and there was no indication that any other condition was implicated in causing the injuries, the *Winn–Dixie* predicate was satisfied. In addition, these injuries were relevant to the issue of foreseeability, an element of negligence. Applying Rules 401 and 402 of the Rules of Civil Evidence, the court could have concluded that the prior injuries were relevant to show that Brookshire, with knowledge of the prior similar injuries, could have foreseen that failure to provide necessary equipment or failure to require team lifting might have contributed to Wagnon's injury. Consequently, we hold that the trial court did not abuse its discretion in admitting evidence of these injuries.

■ In regards to Moore, her testimony that she had been hurt while working for Brookshire came in without objection. She was then asked by Brookshire about going back to work after her injury. When Wagnon finally asked Moore how she was hurt, Brookshire objected. The trial court held a bench conference, but it was not on the record. Consequently, we do not know how or if the court ruled on the objection. Brookshire failed to complain that the conference was not on the record or that the court did not rule on the objection. Brookshire, therefore, waived error on the admission of Moore's testimony.

■ Brookshire also argues that Wagnon's expert witness, Henry Wickes ("Wickes"), was impermissibly allowed to testify about the above-described injuries. Because we have held that the occurrences satisfied the *Winn–Dixie* test, it was not error for Wickes to testify concerning those injuries. Brookshire further complains that the trial court erred when it admitted Jim Martin's ("Martin") testimony that when he was employed as a butcher through 1989, Brookshire had no safety program. Because of its proximity in time to Wagnon's injury in 1990, as well as because of its cumulative nature,[1] we hold

---

1. Several other employees testified that there was no safety program before 1990, including

Wagnon's manager at the time of the injury.

that this was not error, or if error, not harmful.

■ In its fourth point of error, Brookshire asserts that there was insufficient evidence of proximate causation to establish liability. In reviewing an attack on the legal sufficiency of the evidence, or a "no evidence" point, we consider only the evidence and reasonable inferences that tend to support the trial court's findings, and disregard all evidence and inferences to the contrary. *Best v. Ryan Auto Group, Inc.*, 786 S.W.2d 670, 671 (Tex.1990). If there is more than a scintilla of evidence to support the finding, the court of appeals may not overturn the finding on a no evidence point of error. *Responsive Terminal Systems, Inc. v. Boy Scouts of America*, 774 S.W.2d 666, 668 (Tex. 1989). When reviewing a judgment to determine factual insufficiency of the evidence, this court must consider and weigh all of the evidence, and should set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986).

As Brookshire correctly points out, causation consists of cause in fact and foreseeability. Brookshire asserts that the injury in question was not caused when Wagnon lifted a single box of heavy meat, but when he was simply performing his regular duties. Consequently, the injury was not foreseeable. It cites numerous pre-OSHA cases in support of this proposition. *Werner v. Colwell*, 909 S.W.2d 866, 869 (Tex.1995) makes it clear, however, that this is true only if the job itself is not unusual or does not pose a threat of injury.

Wickes testified that the guidelines for manual work practices, which was published by National Institute for Occupational Safety & Health ("NIOSH"), stated that the maximum permissible lift by the strongest, best-trained worker was 64.7 pounds. He also stated that these guidelines were commonly available to and used by employers in developing their own safety rules. Wickes further testified that the combination of the weight of the box and the method of lifting which Wagnon had to incorporate in order to do his job posed a threat of injury. He concluded

that Brookshire was negligent in requiring its employees to lift such heavy boxes in such a manner, and that Brookshire's negligence was the cause of Wagnon's injury. Wickes stated that Brookshire should have reduced the weight of the meat boxes, should not have required transfer of boxes from pallet to unicart, should have used a team lifting procedure, a roller conveyor, or a trolley arrangement, and/or screened employees and determined the maximum weight which each employee could safely lift. He further testified that a simple admonishment to "bend legs and lift with legs and arms" would not have prevented Wagnon's injury, since it was a dynamic lift where Wagnon had to lift over his head and twist his body in order to place the box on the unicart.

Mike Frenzel ("Frenzel"), Brookshire's expert witness, testified that an employer cannot always eliminate the hazard of lifting. He further stated that NIOSH lifting guidelines are not law and that an employer is not compelled to comply with them. Frenzel pointed out that Wagnon's actions on the day in question constituted the worst combination of lifting problems. He testified that if Wagnon had gotten another cart and put the box on the lower level, Wagnon would have significantly reduced the risk of injury. Frenzel opined that training books on the subject of lifting should tell an employee to assess the lift, check the weight, check the object to determine if it can be gripped, check route and make sure it is clear, check footing, and if the object is too heavy, get help. He assumed that Brookshire had trained its employees on the correct lifting technique, but even if it had not, it was his opinion that Wagnon should have known the "rules" since he had been a butcher for thirty years. Frenzel agreed with NIOSH suggestions that a person should not turn while lifting, that he should not lift while in an awkward position, and that he should utilize team lifting of heavy objects. He admitted that Brookshire recognized that the weight of the meat boxes posed a lifting hazard.

Wagnon testified that on the day of his injury, there was only room for one more unicart in the cooler. Consequently, he had to pile the unicart with all of the boxes from

the pallet, requiring him to place boxes "head high." When he did so, his back began to hurt. Wagnon also stated that he had never been trained to lift correctly, had never seen a safety videotape, and had never been told about team lifting. He admitted that he signed a log in sheet stating that he had attended a meeting and saw a video, even though he had not. He did so because he was told by his supervisor that he could not work unless he signed. Cindy Hawley testified that before Wagnon began to unload the pallet on the day of his injury, he asked for help. None was forthcoming, however. According to Vincent Smith ("Smith"), the assistant store manager, there had never been a written safety policy before 1990. He did recall a poster on the wall which illustrated the correct way to lift. He did not remember if Wagnon saw the safety video. Martin agreed that there had never been any safe lifting classes, and no rules or guidelines on how much weight to lift or when to ask for help. Moore stated that there were no rules about asking for help, and that help was not always available. Mike Garner, Wagnon's manager, testified in his deposition that at the time of Wagnon's injury, there was no safety program and that he did not see the safety video until 1992. At trial, he stated that when Wagnon was injured, there was a videotape which showed employees how to lift correctly. He admitted that it would have been a better practice to enlarge the door to the cooler so employees could take the pallets directly into the cooler instead of first having to transfer the meat from the pallet to the unicart.

Robert Gilmer ("Gilmer"), Brookshire's Director of Risk Management, testified that he began developing a safety program in December of 1989. While doing his initial risk analysis, he identified some lifting injuries in the meat market area. He stated that the most significant factor in back injuries was the weight of the object lifted. Gilmer made one change in regards to the weight of meat boxes. He asked that three piece chuck boxes be changed to two piece chuck boxes, which reduced the weight from 115 pounds to 82–87 pounds. He produced the safety video, which discussed proper lifting procedure. In discussing lifting a 50–pound bag of dog food, he stated "we have a real problem here." When showing a "proper lift," he twisted in the process. There was nothing in the tape condemning an overhead lift. Gilmer told employees that if they needed some help, "try to get some help." In regards to lifting a 100–pound bag of potatoes, he said that, whenever possible, get help if it was available. He also stated that whenever possible, avoid putting strain on the back, but that employees must work in a hurry. Furthermore, at trial, he testified that he was not familiar with a team lift. Both the Jones and Abernathy injuries occurred before Wagnon hurt his back. They were performing substantially similar activities for Brookshire. Dr. David Hampton ("Hampton"), Wagnon's orthopedic surgeon, stated that his patient's heavy lifting on the day of his injury aggravated a pre-existing condition which had not previously caused Wagnon any problems.

The preceding evidence supports a finding that an injury such as Wagnon's was foreseeable to Brookshire and that Brookshire's action and/or inaction was the cause in fact of Wagnon's injury. We hold that the evidence of proximate cause, including cause in fact and foreseeability, was not so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We overrule point of error four.

 In its fifth point of error, Brookshire complains that the trial court erred in overruling Brookshire's motion for a directed verdict. A directed verdict is proper under Texas Rule of Civil Procedure 301 when: (1) a defect in the opponent's pleadings makes them insufficient to support a judgment; 2) the evidence conclusively proves a fact that establishes a party's right to judgment as a matter of law; or 3) the evidence offered on a cause of action is insufficient to raise an issue of fact. *Edlund v. Bounds*, 842 S.W.2d 719, 723–24 (Tex.App.—Dallas 1992, writ denied). If there is any conflicting evidence of probative value on any theory of recovery, the issue is for the jury, and an instructed verdict is improper. *White v. Southwestern Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex.1983). In Brookshire's sixth point of error, it asserts that the trial court erred in denying Brookshire's motion for judgment notwithstanding

the verdict. A trial court may disregard a jury's findings and grant a motion for judgment notwithstanding the verdict, pursuant to Texas Rules of Civil Procedure 301 and 324(c) only when there is no evidence upon which the jury could have made its findings. *Mancorp, Inc. v. Culpepper,* 802 S.W.2d 226, 227 (Tex.1990). When there is more than a scintilla of competent evidence to support the jury's finding, the judgment notwithstanding the verdict was properly denied. *Southern States Transp., Inc. v. State,* 774 S.W.2d 639, 640 (Tex.1989). Consequently, the standard of review for the denial of a directed verdict and a judgment notwithstanding the verdict is the same. If there is some probative evidence of foreseeability and causation, then the trial court properly denied both motions. We hold that based upon the evidence as described earlier in this opinion, there was more than a scintilla of evidence to support a finding of negligence on the part of Brookshire. Points of error five and six are overruled.

In its seventh point of error, Brookshire maintains that the trial court erred in refusing to submit its requested explanatory instructions on negligence and its jury question on damages. The explanatory instructions requested by Brookshire were as follows:

> Once an employer has furnished a safe way for an employee to do a job, the employer has no duty to provide a second safe way. An employee cannot complain if an employer merely requires an employee to do the usual and customary work required of persons in his line of employment, or required by the character of the business in which he was employed.
>
> Where an employer has provided a safe means of accomplishing a task, it is unreasonable to foresee that an employee will choose to perform the task in an unsafe manner.
>
> An employer is not liable when it has provided help and injury results from the act of the employee in voluntarily proceeding to do the work without assistance. The same is true when sufficient help is nearby and available and the employee does the work alone without seeking or asking for assistance.

Brookshire argues that these instructions were necessary because to permit a broad form instruction of negligence without explanation of the duties of an employee, improperly shifts the burden of proof to the employer.

In regards to denying a requested instruction, the essential question before the trial court is whether the instruction will aid the jury in answering the questions. *Louisiana & Ark. Ry. Co. v. Blakely,* 773 S.W.2d 595, 598 (Tex.App.—Texarkana 1989, writ denied). When the court refuses to submit a requested instruction, the question on review is whether the request was reasonably necessary to enable the jury to render a proper verdict. Tex.R.Civ .P. 277. When the refusal is based on a determination that the request is unnecessary, the abuse of discretion standard of review applies. *Vinson & Elkins v. Moran,* 946 S.W.2d 381, 405 (Tex.App.—Houston [14th Dist.] 1997, no writ). We hold that the requested instructions were not necessary to enable the jury to render a proper verdict. The trial court did not abuse its discretion in refusing the submission of the instructions since they were not supported by the evidence, they were not correct statements of the law, and they impermissibly raised the issue of contributory negligence.

Brookshire also complains that the trial court erred in refusing to submit the following jury question on Wagnon's damage claims:

> What sum of money, if paid now in this case, would fairly and reasonably compensate Talbert Wagnon for his injuries, if any, that resulted from the occurrence in question?
>
> Consider the elements of damages listed below and none other. Consider each element separately. Do no include damage for one element in any other element. Do not include interest on any amount of damages that you find. Do not include any amount for any condition not resulting from the accident in question. Do not reduce the amounts, if any, in your answers because of the negligence, if any, of Talbert Wagnon. Answer in dollars and cents for damages.

| | | Sustained in past | In reasonable probability will be sustained in the future |
|---|---|---|---|
| Element A: | Pain and suffering | _____ | _____ |
| Element B: | Mental anguish | _____ | _____ |
| Element C: | Loss of wages and earning capacity | _____ | _____ |
| Element D: | Medical expenses | _____ | _____ |
| Element E: | Disfigurement | _____ | _____ |

Brookshire argues that the trial court erred by submitting a broad-form single damage question without separating the individual damage claims because this allowed the jury to determine damages on issues without evidence. Specifically, Brookshire complains that there was no evidence of future medical care or lost wages or earning capacity.

▇▇▇▇▇ Texas Rule of Civil Procedure 278 provides that "[t]he court shall submit the questions ... in the form provided by Rule 277, which are raised by the written pleadings and the evidence." Tex.R.Civ.P. 278. The supreme court has interpreted Rule 278 as providing "a substantive, non-discretionary directive to trial courts requiring them to submit requested questions to the jury if the pleadings and any evidence support them." *Elbaor v. Smith,* 845 S.W.2d 240, 243 (Tex.1992). There is a presumption in favor of broad-form submission of questions. Tex.R.Civ.P. 277; *Texas Dept. of Human Services v. E.B.,* 802 S.W.2d 647, 649 (Tex.1990). Therefore, if there is more than a scintilla of evidence of each of the elements of damages listed, the trial court should utilize the broad-form submission. To have a case reversed on jury charge error, however, harmful error must be shown. *Boatland of Houston, Inc. v. Bailey,* 609 S.W.2d 743, 749–50 (Tex.1980). Error is reversible only if, when viewed in light of the totality of the circumstances, it probably caused the rendition of an improper judgment. Tex.R.App.P. 44.1(a)(1).

▇▇▇ During trial, Wagnon testified to his age and to the amount of money he was earning each year before he was injured. He also testified that he had bad days and good days, and on bad days he could not get out of bed. On good days, he still hurt quite a bit and was not capable of doing many of the things which he did before his injury. Dr. Hampton testified that Wagnon had a progressive condition and that he had a permanent twenty-five pound lifting restriction, with no bending, carrying or lifting overhead. He further stated that it was possible that Wagnon would eventually need epidural cortisone injections or surgery. Dr. Hampton could not testify with reasonable medical probability that Wagnon would need future medical care, however. Although there was more than a scintilla of evidence of lost wages, there was no evidence of future medical expenses. Consequently, a question on future medical expenses should not have been submitted to the jury.

▇▇▇ The question before us, then, is whether the court's submission of future medical expenses as an element of damages constituted reversible error. We note that the charge contained the limiting instruction "if any," when referring to the damages. The jury was also charged to consider each element separately. This clarified to the jury that Wagnon may not have suffered each element of damages. In addition, there is no showing that the jury awarded damages for future medical expenses. Furthermore, because there was evidence of damages in excess of the amount awarded by the jury *without consideration of future medical ex-*

*penses,* we hold that the broad-form submission listing future medical expenses as an element of damages was harmless error. We overrule point of error seven.

Brookshire next complains, in point of error eight, that the evidence was insufficient to support the jury's finding of damages. Specifically, Brookshire contends that there was no evidence of future medical expenses, loss of future wages or earning capacity, or mental anguish/pain and suffering.

■ Under applicable Texas law, a recovery for future medical expenses requires a showing that there is a reasonable probability that such medical expenses will be incurred in the future. *Fibreboard Corp. v. Pool,* 813 S.W.2d 658, 681 (Tex.App.—Texarkana 1991, writ denied). Probability has been defined as "more than a 50 percent chance." *Id.* As we stated previously in this opinion, Wagnon failed to prove future medical expenses sufficient for recovery. His expert witness' testimony was entirely too speculative to constitute even *some* evidence that Wagnon would require medical treatment in the future.

■ Where a plaintiff seeks damages for impairment of earning capacity, he must prove the amount of such damages with the degree of certainty to which it is susceptible. *Bonney v. San Antonio Transit Co.,* 160 Tex. 11, 325 S.W.2d 117, 121 (1959). A plaintiff must introduce evidence from which a jury may reasonably measure in monetary terms his earning capacity prior to injury, unless some reason appears for his failure to do so. *Paragon Hotel Corp. v. Ramirez,* 783 S.W.2d 654, 661 (Tex.App.—El Paso 1989, writ denied). Although the amount of damages resulting from impairment of a plaintiff's earning capacity must be left largely to the sound judgment and discretion of the jury, the jury should not be left to mere conjecture where facts appear to be available upon which the jury could base an intelligent answer. *Id.* At trial, Wagnon testified that he earned $29,000 per year as a butcher, and that he was in excellent physical condition before he was hurt. He also stated that he was fifty years old when Brookshire discontinued his salary payments. The jury could have reasonably inferred that Wagnon's work-life expectancy constituted at least an additional fifteen years, and possibly more.[2] Thus, there was some evidence that Wagnon suffered a loss in earning capacity of at least $435,000.00.

■ The term "mental anguish" implies a relatively high degree of mental pain and distress. It means more than disappointment, anger, resentment or embarrassment, although it may include all of those. *Parkway Co. v. Woodruff,* 901 S.W.2d 434, 444 (Tex.1995). Mere emotions of anger, frustration and vexation are insufficient to conclude that a plaintiff suffered compensable mental anguish. *Id.* However, mental anguish may be implied from illness or injuries accompanied by physical pain that is proximately caused by the defendant. *Kingham Messenger & Delivery Service, Inc. v. Daniels,* 435 S.W.2d 270, 273 (Tex.Civ.App.—Houston [14th Dist.] 1968, no writ); *Coca Cola Bottling Co. of Fort Worth v. McAlister,* 256 S.W.2d 654, 655 (Tex.Civ.App.—Fort Worth 1953, no writ). And certainly the loss of enjoyment of life, which encompasses the loss of the injured party's former lifestyle, may be considered when determining mental anguish damages. *Fibreboard Corp.,* 813 S.W.2d at 674–75. An award of mental anguish damages will survive a legal sufficiency challenge when the plaintiff has introduced direct evidence of the nature, duration, and severity of his mental anguish, thus establishing a substantial disruption in his daily routine. *Parkway,* 901 S.W.2d at 444. In the instant case, Martin testified that he was a good friend of Wagnon's and that he was aware of how the back injury affected his life. He stated that Wagnon could no longer hunt, work on cars, do karate or roller skate. Jones agreed that Wagnon could no longer wash and wax his own cars. Wagnon testified that he had trouble sleeping, lost his house after having paid on the mortgage for seventeen years, and could no longer play with his grandchildren. He also stated that he was in almost constant pain. Wagnon's wife claimed that Wagnon could not work on

---

2. Work-life expectancy need not be based on life expectancy tables; the jury may reach its own conclusion on work-life expectancy based on evidence of the injured person's age, health, and physical condition prior to the injury, and the permanence of the injury. *Borden Inc. v. Guerra,* 860 S.W.2d 515, 524–25 (Tex.App.—Corpus Christi 1993, writ dism'd by agr.).

**354**

cars, skate, play tennis, practice karate or hunt because of his back injury. Dr. Hampton testified that Wagnon's condition was progressive and that it would probably never improve. A life expectancy table was introduced to indicate how long into the future Wagnon would probably suffer from his disability. We hold that there was some evidence sufficient to support an award of damages for mental anguish and physical pain and suffering as well as loss of earning capacity. We overrule point of error eight.

■■■■ Brookshire, in its ninth point of error, complains that the trial court erred in denying Appellant's motion for remittitur. Although the trial court has no authority to change the jury's award, the trial court judge may suggest a remittitur. William Powers, Jr. & Jack Ratliff, *Another Look at "No Evidence" and "Insufficient Evidence,"* 69 TEX.L.REV. 515, 564 (1991). The proper standard of review in reviewing a trial court's denial of a motion for remittitur is factual sufficiency, not abuse of discretion. *See Snoke v. Republic Underwriters Ins. Co.,* 770 S.W.2d 777, 777–78 (Tex.1989). We must "examine all the evidence in the record to determine whether sufficient evidence supports the damage award, remitting only if some portion is so factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust." *Pope v. Moore,* 711 S.W.2d 622, 623 (Tex. 1986). The process of awarding damages for amorphous, discretionary damages, such as mental anguish and pain and suffering, is inherently difficult because the injury constitutes a subjective, unliquidated, non-pecuniary loss. *See Duron v. Merritt,* 846 S.W.2d 23, 26 (Tex.App.—Corpus Christi 1992, no writ). It is "necessarily an arbitrary process, not subject to objective analysis." *LaCoure v. LaCoure,* 820 S.W.2d 228, 234 (Tex.App.— El Paso 1991, writ denied). Because there are no objective guidelines to assess the money equivalent to such injuries, the jury is given a great deal of discretion in awarding an amount of damages it determines appropriate. *Hicks v. Ricardo,* 834 S.W.2d 587, 591 (Tex.App.—Houston [1st Dist.] 1992, no writ). A challenge to a damages award for these types of unliquidated and intangible injuries is reviewed as any other challenge based upon the sufficiency of the evidence.

*Larson v. Cactus Util. Co.,* 730 S.W.2d 640, 641 (Tex.1987). Because there was evidence of $435,000.00 in lost wages, as well as substantial evidence of mental anguish, including loss of enjoyment of life, and physical pain and suffering both in the past and the future, we do not find that an award of $750,000.00 was so against the great weight and preponderance of the evidence as to be manifestly unjust. Point of error nine is overruled.

■■■■ In its tenth point of error, Brookshire complains that the trial court erred in denying Brookshire's motion for mistrial regarding insurance. Normally, disclosing an employer's nonsubscriber status to the jury is error. *FFP Operating Partners, L.P. v. Love,* 884 S.W.2d 898, 899 (Tex.App.—Texarkana 1994, no writ). In a review of the record, when Wagnon first stated to the jury during *voir dire* that this was "not a worker's compensation case," Brookshire objected and sought a mistrial. It failed, however, to request an instruction to disregard or obtain a ruling by the trial court. Furthermore, during trial Brookshire discussed and explained at length its decision to opt out of the worker's compensation system. Brookshire, therefore, waived error. We overrule point of error ten.

The judgment of the trial court is *affirmed.*