**Opinion filed July 29, 2016**



In The

# Eleventh Court of Appeals

_____

## No. 11-14-00193-CV

_____

## ALLSTAR REFINISHING & COLLISION CENTER, INC., Appellant

## V.

## AURELIA VILLALOBOS AND NATIONWIDE INSURANCE COMPANY, Appellees

**On Appeal from the County Court at Law**
**Midland County, Texas**
**Trial Court Cause No. CC-14325**

## M E M O R A N D U M   O P I N I O N

This appeal arises from a jury trial in a dispute between a consumer and an auto repair business. Aurelia Villalobos sued Allstar Refinishing & Collision Center, Inc., asserting claims for conversion, breach of contract, fraud, unjust enrichment, and DTPA violations. Allstar added Nationwide Insurance Company to the lawsuit as a third-party defendant on Allstar's breach of contract claim.

The trial court granted Nationwide's motion for directed verdict on Allstar's breach of contract claim. The jury answered all liability questions in favor of Villalobos. The jury awarded her actual damages of $14,023.64. On her DTPA claim, the jury found that Allstar knowingly and intentionally engaged in an unconscionable course of action, and the jury awarded Villalobos an additional $20,000 for such conduct. The jury also found that the harm suffered by Villalobos resulted from malice on the part of Allstar, and it awarded her $50,000 in exemplary damages. The trial court entered judgment in favor of Villalobos by awarding her $14,023.64 in actual damages and $50,000 in exemplary damages. Allstar challenges the award of exemplary damages in seven issues. We affirm.

*Background Facts*

In 2006, Villalobos took her car to Allstar for repairs following an accident that caused extensive damage to her vehicle. Nationwide, Villalobos's insurance carrier, capped the amount it would approve in repairs at $11,957.22 and informed Allstar that any additional repairs would require additional authorization by Nationwide. Allstar kept the car for fourteen months and rented a car to Villalobos in the meantime. The rental expenses totaled $7,122.50. Allstar made additional repairs over the fourteen-month span without obtaining express approval from Nationwide for the additional repairs. Allstar subsequently sent Nationwide a bill for $21,035.60 for the repairs. When Nationwide refused to pay the difference between the original estimate and the final bill, Allstar filed a mechanic's lien on the vehicle and sent Villalobos a bill for $15,162.49. Allstar then sold the vehicle to its general manager's daughter.

*Analysis*

In its first and second issues, Allstar challenges the legal and factual sufficiency of the evidence to support the jury's award of exemplary damages. In

advancing these issues, Allstar is essentially challenging the evidence supporting the jury's "malice" finding.

Chapter 41 of the Civil Practice and Remedies Code provides that "exemplary damages may be awarded only if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from: (1) fraud; (2) malice; or (3) gross negligence." TEX. CIV. PRAC. & REM. CODE ANN. § 41.003(a) (West 2015). In reviewing the legal sufficiency of the evidence supporting a finding that must be proved by clear and convincing evidence, we must consider all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that the finding was true. *Bennett v. Reynolds*, 315 S.W.3d 867, 872 (Tex. 2010); *In re J.F.C.*, 96 S.W.3d 256, 264–65 (Tex. 2002); *Matbon, Inc. v. Gries*, 288 S.W.3d 471, 488 (Tex. App.—Eastland 2009, no pet.). For this review, we must consider all the evidence, not just the evidence favoring the verdict. *City of Keller v. Wilson*, 168 S.W.3d 802, 817 (Tex. 2005). The evidence is legally insufficient when no reasonable factfinder could form a firm belief or conviction that the matter to be proven is true. *In re J.F.C.*, 96 S.W.3d at 266. For factual sufficiency challenges, the question is whether the evidence is such that a factfinder could reasonably form a firm belief or conviction that the defendant acted with malice. *See In re C.H.*, 89 S.W.3d 17, 18–19, 25 (Tex. 2002).

The trial court's charge properly defined "malice" as "a specific intent by Allstar Refinishing & Collision Center, Inc. to cause substantial injury or harm to Aurelia Villalobos." *See* CIV. PRAC. & REM. § 41.001(7) (West Supp. 2015). Specific intent means that the actor desires to cause the consequences of his act or that he believes the consequences are substantially certain to result from it. *Reed Tool Co. v. Copelin*, 689 S.W.2d 404, 406 (Tex. 1985). Malice may be proven by

direct or circumstantial evidence. *Seber v. Union Pac. R.R. Co.*, 350 S.W.3d 640, 654 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

Allstar contends that its actions "were simply a matter of accident, mistake, or even negligence, but they certainly did not rise to the level of malice." Allstar provided a preliminary estimate to Nationwide that it would cost $11,957.22 to repair Villalobos's vehicle. It was estimated that the vehicle was worth roughly $20,000 at the time of the accident. Nonetheless, Allstar performed additional repairs on the vehicle without authorization to do so, which brought the total cost of repairs up to $21,035.60. Given the high repair costs based upon the preliminary estimate, Nationwide made it clear to Allstar that the vehicle was nearly a total loss and that payment for supplemental repairs would not be approved. Allstar acknowledged that it made the supplemental repairs without approval.

According to a representative for Nationwide, repairs on the vehicle should have taken no more than thirty days. Allstar kept the vehicle for fourteen months, which a representative for Nationwide described as being "extremely abnormal." Allstar rented a replacement vehicle to Villalobos while her vehicle was being repaired, for which Allstar charged her $7,122.50 in rental expenses. The Nationwide policy only covered rental expenses for up to thirty days or $1,050, whichever came first. Allstar initially agreed to waive the excess rental costs. Allstar then billed Nationwide for the $21,035.60 in repairs. A representative for Allstar testified that, when Nationwide refused to pay the amounts charged above the initial estimate, Allstar filed a mechanic's lien to put pressure on Villalobos because Allstar "thought that this would prompt Nationwide to move forward." Allstar demanded an additional $15,162.49 from Villalobos to lift the lien, which apparently included rental expenses that Allstar had initially agreed to waive.

Allstar then foreclosed upon Villalobos's car despite being warned by her attorney that it did not have the right to do so. Allstar ultimately conveyed the car

4

to the daughter of one of its employees for $8,500. Other than a bare assertion that it was entitled to enforce a mechanic's lien on the car, Allstar does not challenge the jury's conversion finding. Conversion is the unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another to the exclusion of, or inconsistent with, the owner's rights. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971). A conversion may serve as the basis for a finding of malice. *See Bennett*, 315 S.W.3d at 871–72. It is clear from the record that Allstar intentionally retained and then sold Villalobos's car without authorization and over her objections. Such conduct is willful, not accidental. *See id.* at 872. Furthermore, Villalobos's loss of the use of her vehicle constituted injury to her that was both real and significant. *See id*. Based on the record before us, we conclude that the evidence was legally and factually sufficient to support the jury's finding, by clear and convincing evidence, that the harm to Villalobos resulted from malice by Allstar in the form of a specific intent by Allstar to cause substantial injury or harm to Villalobos. We overrule Allstar's first and second issues.

In Allstar's third issue, it asserts that the trial court erred when it failed to grant Allstar's request for new trial based on the improper award of exemplary damages. A trial court's denial of a motion for new trial is reviewed for an abuse of discretion. *In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006); *Williams v. Colthurst*, 253 S.W.3d 353, 366 (Tex. App.—Eastland 2008, no pet.). A trial court abuses its discretion when it acts in an unreasonable or arbitrary manner or when it acts without reference to any guiding rules or principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). Allstar asserts that the trial court abused its discretion when it denied Allstar's motion for new trial because Villalobos failed to prove by clear and convincing evidence that Allstar acted with malice. As we have already found that the evidence was legally and factually sufficient to support the

5

jury's finding of malice, we conclude that the trial court did not abuse its discretion by overruling Allstar's motion for new trial. We overrule Allstar's third issue.

In Allstar's fourth issue, it asserts that the exemplary damages were excessive. "Exemplary damages awarded against a defendant may not exceed an amount equal to the greater of: (1)(A) two times the amount of economic damages; plus (B) an amount equal to any noneconomic damages found by the jury, not to exceed $750,000; or (2) $200,000." CIV. PRAC. & REM. § 41.008(b). The jury awarded actual damages of $14,023.64 and exemplary damages of $50,000. The jury's award of $50,000 in exemplary damages is not in excess of the statutory cap of $200,000, which Allstar acknowledges. *See id.*; *see also id.* § 41.010(b). However, Allstar asks us to consider the reasonableness of the amount awarded by the jury even though it fell below the statutory cap.

We review a challenge to the excessiveness of an exemplary damages award as a factual sufficiency challenge. *Maritime Overseas Corp. v. Ellis*, 971 S.W.2d 402, 406 (Tex. 1998). We may only reverse if the exemplary damage award is so against the great weight and preponderance of the evidence as to be manifestly unjust. *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 30 (Tex. 1994). No set rule or ratio between actual and exemplary damages exists to determine whether an exemplary damage award is excessive. *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex. 1981). Factors we consider in determining the reasonableness of an award include the following: (1) the nature of the wrong; (2) the character of the conduct involved; (3) the degree of culpability of the wrongdoer; (4) the situation and sensibilities of the parties concerned; (5) the extent to which such conduct offends a public sense of justice and propriety; and (6) the net worth of the defendant. CIV. PRAC. & REM. § 41.011(a).

The jury determined that Allstar converted Villalobos's vehicle. As noted previously, Allstar has not challenged this finding on appeal. The jury further

determined that Villalobos incurred "loss of use" damages in the amount of $14,023.64 because of the conversion. Thus, the nature of the harm was economic rather than physical. Furthermore, the jury determined that the character of the conduct was malicious. The culpability of Allstar's conduct appears extreme because Allstar intentionally retained and sold Villalobos's car without authorization and over her objections. With respect to the situation and sensibilities of the parties concerned, the circumstances of this case arose as a transaction between a consumer and a business. Allstar's conduct offends a public sense of justice and propriety because Villalobos entrusted her car to Allstar, who maliciously converted it. The record does not reflect Allstar's net worth. Upon consideration of the above factors, we find that $50,000 in exemplary damages was not so against the great weight and preponderance of the evidence as to be manifestly unjust. We overrule Allstar's fourth issue.

Allstar's fifth issue is an extension of its fourth issue. It asserts that the trial court erred in denying its motion for a remittitur of the exemplary damages because the evidence supporting the award was factually insufficient. We review the trial court's denial of a motion for remittitur for factual sufficiency. *Bazan v. Munoz*, 444 S.W.3d 110, 122 (Tex. App.—San Antonio 2014, no pet.) (citing *Brookshire Bros., Inc. v. Wagnon*, 979 S.W.2d 343, 354 (Tex. App.—Tyler 1998, pet. denied)). We examine all of the evidence in the record to determine whether sufficient evidence supports the damage award, remitting only if some portion is so factually insufficient or so against the great weight and preponderance of the evidence as to be manifestly unjust. *Id.* As we have already determined that factually sufficient evidence supported the award of exemplary damages, we conclude that the trial court did not abuse its discretion in denying Allstar's motion for remittitur. We overrule Allstar's fifth issue.

7

In its sixth issue, Allstar asserts that the exemplary damages were grossly excessive under constitutional standards. The Due Process Clause of the Fourteenth Amendment prohibits the imposition of grossly excessive or arbitrary punishments on a defendant. *See* U.S. CONST. amend. XIV, § 1; *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003). The constitutionality of exemplary damages is a legal question, which we review de novo. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 307 (Tex. 2006); *Barnhart v. Morales*, 459 S.W.3d 733, 751–52 (Tex. App.—Houston [14th Dist.] 2015, no pet.). The Supreme Court of the United States has directed appellate courts to review an award of exemplary damages for constitutional excessiveness by using three guideposts. *Bennett*, 315 S.W.3d at 873 (citing *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 568, 575, 580, 583 (1996)). These guideposts are as follows: (1) the degree of reprehensibility of the defendant's conduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the exemplary damages awarded; and (3) the difference between the exemplary damages awarded by the jury and the civil penalties authorized or imposed in comparable cases. *Id.* (citing *Campbell*, 538 U.S. at 418). "Exacting appellate review" employing these guideposts is necessary to ensure that exemplary damages are "based upon an 'application of law, rather than a decisionmaker's caprice.'" *Campbell*, 538 U.S. at 418 (quoting *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424, 436 (2001)).

The first guidepost—the reprehensibility of the defendant's conduct—is the most important. *Bennett*, 315 S.W.3d at 874 (citing *Gore*, 517 U.S. at 575). Within that first guidepost, we consider five nonexclusive factors: (1) whether the harm inflicted was physical rather than economic; (2) whether the tortious conduct showed an indifference to or a reckless disregard for the health or safety of others; (3) whether the target of the conduct had financial vulnerability; (4) whether the conduct involved repeated actions, not just an isolated incident; and (5) whether the

8

harm resulted from intentional malice, trickery, or deceit, as opposed to mere accident. *Id.* (citing *Campbell*, 538 U.S. at 419); *see Gore*, 517 U.S. at 576–77. One factor alone may not be sufficient to sustain an exemplary damage award on appeal, and the absence of all of them renders an exemplary damage award suspect. *Bennett*, 315 S.W.3d at 874. While a reviewing court must presume that a plaintiff has been made whole for his or her injuries by the compensatory damage award, "exemplary damages are permitted if the wrongdoing 'is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence.'" *Id.* (quoting *Campbell*, 538 U.S. at 419).

The harm inflicted by Allstar was economic rather than physical, and Allstar's tortious conduct did not show an indifference to or a reckless disregard for the health or safety of others. Villalobos asserts that she was financially vulnerable because she cleaned houses for a living and relied on the insurance company to pay for repairs.

With respect to the fourth factor, Allstar's course of conduct took place over a fourteen-month period and is, therefore, more than simply an isolated incident. Allstar filed a lien on Villalobos's car, refused to return the car despite Villalobos's demands, and then foreclosed its lien against the car, eventually conveying it to the daughter of one of its employees.

As provided earlier, the jury determined that the harm to Villalobos resulted from malice. Based on the evidence in support of the third, fourth, and fifth factors, we conclude that the "reprehensibility" guidepost weighs in favor of exemplary damages.

Regarding the second guidepost, the Supreme Court in *Campbell* "decline[d] again to impose a bright-line ratio" of exemplary to actual damages, but stated that "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *Campbell*, 538 U.S. at 425. In

9

*Chapa*, the Texas Supreme Court found that exemplary damages of 4.33 times actual damages were constitutionally excessive and remanded to the court of appeals to determine an appropriate multiplier.[1]  *Chapa*, 212 S.W.3d at 309–10.  In *Khorshid, Inc. v. Christian*, the Dallas Court of Appeals found that exemplary damages of more than sixty-five times actual damages were excessive.  257 S.W.3d 748, 768 (Tex. App.—Dallas 2008, no pet.).  The actual damages in *Khorshid* were purely economic and were based on a taxi company's unauthorized seizure of a vehicle from a former employee.  *Id.* at 755–56, 767.  The Dallas Court of Appeals suggested a remittitur to $12,000 for exemplary damages, which was four times the amount of the actual damages awarded by the jury.  *Id.* at 769.  In *Acadia Healthcare Co. v. Horizon Health Corp.*, the Fort Worth Court of Appeals upheld the finding of actual malice where the defendants had misappropriated trade secrets.  472 S.W.3d 74, 95 (Tex. App.—Fort Worth 2015, pet. filed).  However, the Fort Worth Court of Appeals found that the exemplary damages were excessive and suggested a remittitur of the exemplary damages to four times actual damages.  *Id.* at 99.

In the present case, Villalobos was awarded $50,000 in exemplary damages and $14,023.64 in actual damages.  Thus, the exemplary damages were approximately 3.56 times actual damages, which is well within the four-to-one ratio suggested by the United States Supreme Court and the Texas Supreme Court, and is also in line with precedent set by our sister courts in similar cases.  Accordingly, we find that the 3.56-to-1 ratio of exemplary to actual damages is not grossly excessive.

The third guidepost requires an examination of the difference between the exemplary damages awarded by the jury and the civil and criminal penalties

---

[1]On remand from the Texas Supreme Court, the Beaumont Court of Appeals granted the parties' joint motion to vacate the judgment and remand the cause to the trial court with instructions to dismiss the case with prejudice.  *See Chapa v. Tony Gullo Motors I, L.P.*, No. 09-03-568 CV, 2007 WL 4277999, at *1 (Tex. App.—Beaumont Dec. 6, 2007, no pet.) (mem. op.).  Thus, the Beaumont Court of Appeals never determined an appropriate multiplier.

authorized or imposed in comparable cases. *Bennett*, 315 S.W.3d at 881–82. Villalobos points us to civil penalties provided by the DTPA in assessing the third guidepost, as well as the criminal penalties for theft. Theft in the amount of $14,023.64 would constitute a state jail felony punishable by confinement for up to two years and a fine not to exceed $10,000. TEX. PENAL CODE ANN. §§ 12.35, 31.03(e)(4)(A) (West Supp. 2015). While it is difficult, if not impossible, to reasonably compare a monetary penalty with any term of imprisonment, the Penal Code makes it clear that state-jail-felony theft is a serious offense. *See Bennett*, 315 S.W.3d at 881 n.73 (cautioning against comparing a monetary penalty with a period of incarceration).

Under the DTPA, Allstar could have been found liable for treble damages because the jury found that Allstar acted "intentionally."[2] TEX. BUS. & COM. CODE ANN. § 17.50(b)(1) (West 2011). Three times actual damages would be $42,070.92. Thus, damages available under the DTPA are not "dwarfed" by the $50,000 in exemplary damages awarded by the jury. *See Campbell*, 538 U.S. at 428. Upon careful consideration of the *Gore* guideposts, we conclude that the jury's award of $50,000 in exemplary damages was not grossly excessive. We overrule Allstar's sixth issue.

As was the case with Allstar's fourth and fifth issues, Allstar's seventh issue is an extension of its sixth issue. It asserts that the trial court erred in denying its motion for a remittitur of the exemplary damage award because the exemplary damages were grossly excessive under constitutional standards. As we have already determined that the jury's award of exemplary damages did not exceed the

---

[2]The jury awarded Villalobos $20,000 in additional damages under the DTPA based upon its finding of intentional conduct on the part of Allstar. Allstar has not challenged the jury's affirmative findings on Villalobos's DTPA cause of action. While those unchallenged findings did not serve as a basis for Villabolos's recovery in the trial court's judgment, they would serve as a basis for a reformed judgment in favor of Villabolos for additional DTPA damages of $20,000 if we were to conclude that the jury's $50,000 award of exemplary damages was excessive.

11

applicable constitutional standards, we conclude that the trial court did not abuse its discretion in denying Allstar's motion for remittitur on this ground. We overrule Allstar's seventh issue.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY

JUSTICE


July 29, 2016

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.