Eliza DURON, Appellant,

v.

Gordon T. MERRITT, Appellee.

No. 13–91–561–CV.

Court of Appeals of Texas,
Corpus Christi.

Nov. 17, 1992.

Rehearing Overruled Jan. 14, 1993.

**24**

Gregory Herrman, Allison & Huerta, Corpus Christi, for appellant.

Van Huseman, David Herrman, Paul Dodson, White, Huseman, Pletcher & Powers, Corpus Christi, for appellee.

Before NYE, C.J., and DORSEY and GILBERTO HINOJOSA, JJ.

## OPINION

NYE, Chief Justice.

This is a personal injury case. Eliza Duron sued Gordon T. Merritt for negligence after a vehicle driven by Merritt allegedly struck the vehicle she was driving. The jury found Merritt seventy-five percent negligent for Duron's injuries, and it found Duron twenty-five percent negligent for her own injuries. The jury awarded Duron $5,000 for past damages and $20,000 for future damages. By two points of error, Duron challenges the legal and factual sufficiency of the evidence to support the jury's calculation of damages. We affirm.

By point one, Duron complains that the trial court erred in not granting a new trial because the jury's award of damages was manifestly too small and inadequate and was so against the great weight and preponderance of the evidence that it was manifestly wrong and unjust. In reviewing a point of error asserting that a finding is "against the great weight and preponderance" of the evidence, we must consider and weigh all the evidence, both the evidence which tends to prove the existence of a vital fact as well as evidence which tends to disprove its existence. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986); *Ford Motor Co. v. Nowak*, 638 S.W.2d 582, 585 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.). So considering the evidence, if a jury finding is so contrary to the great weight and preponderance of the evidence that it is manifestly unjust, the point should be sustained, regardless of whether some evidence exists to support it.

*Watson v. Prewitt*, 159 Tex. 305, 320 S.W.2d 815, 816 (1959); *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

In February 1987, Eliza Duron was driving on Highway 77 to her home in Calallen, Texas. As she entered the intersection of Highways 77 and 44, Gordon Merritt pulled his van up in front of her pickup, and the two vehicles collided. Her pickup received a light blow to its back end. Duron alleged that the impact caused her left jaw to hit the steering wheel. After the collision, she drove to the emergency room. A doctor examined her and noted that her left jaw was popping out of its socket and that she complained of pain in that jaw. After the exam, she went home.

Duron allegedly continued to have headaches and pain and a popping noise in her left jaw. Her attorney sent her to see Dr. Hallick, an oral surgeon, concerning her alleged problems. She saw Dr. Hallick in July 1987, and he diagnosed her as having a dislocation of the cartilage between her left jaw joint (TMJ) and the base of her skull. He tried to correct the problem by giving her medication and placing an orthotic device on her teeth. He testified that based on reasonable medical probability, Duron required surgery. He gave her the option to consult Dr. Auvenshine, a specialist in TMJ-nonsurgical treatment.

Duron saw Dr. Auvenshine in September 1988. He made the same diagnosis as Dr. Hallick and testified that when he last saw her in May 1989, there was a strong possibility that surgery was necessary. He did not recommend surgery. He stated that surgery was not a cure and that with or without surgery, she would continue to have pain and discomfort and depend on the orthotic device. Dr. Auvenshine testified, based on reasonable medical probability, that the collision caused her TMJ problem.

Duron testified that prior to the collision, she did not have jaw pain or a popping noise in her jaw. Since the collision, she has had severe jaw pain, and her jaw has gotten worse. She uses a TENS unit and a

heating pad, along with relaxation in a noise-free room to relieve the pain. Prior to the collision, she was an active person who enjoyed sports, working out, aerobics, and taking part in outdoor activities with her husband. Her TMJ problem had limited these activities, prevented her from doing her housework, and kept her from spending much time with her husband and children.

Two other witnesses, her husband and her supervisor, testified that she had pain in her jaw.

Dr. Everett Dillman, a business economist and vocational expert, testified that Duron was 25.6 years old and had an average of 54.4 extra years of life. Based on her salary of $19,500 per year, she had a wage-earning capacity of $630,000 for her worklife[1], or $742,000 to age 70. He also testified that Duron's TMJ problem had reduced her earning capacity roughly thirty-six percent, or $226,000 for her worklife, or roughly $267,000 to age 70. He stated that her present-day value of loss of household services based on ten hours per week was $93,000. He also testified that if she did not have surgery, the value of her future medical care was a little over $15,000, and if she had surgery, the cost of the surgery would be $8,000–$10,000. If she had a total joint replacement, present value of the surgery would be $15,000.

Drs. Hallick and Auvenshine testified that TMJ problems had many causes, including injury, long-standing muscle activity, stress-related problems, severe bite abnormalities, severe jaw malformation, growth and development problems within the jaw joint, and stretching of the mouth. Dr. Hallick testified, based on reasonable medical probability, that assuming Duron did not have pre-existing problems, the collision could have caused her TMJ problem. He also stated that the cause of her TMJ problem could have been consistent with long-term emotional stress. Dr. Auvenshine testified that other predisposing factors were involved in Duron's TMJ prob-

lem, such as her high stress levels and a growth and development component. He had recommended that she use a TENS unit to relax the muscles of her neck, shoulders, and jaw joint. He stated that she had not gone through with the TENS therapy.

Duron testified that at the present time (January 1991), she was not taking any prescription medication. She also testified that since the collision, she has not had any surgery on her jaw and that she did not have any surgery scheduled.

Dr. Dillman testified that Duron now earns a little over two and one-half times the amount of money that she was earning at the time of the collision.

The case was submitted to the jury on special questions. Question No. 3 asked:

What sum of money, if paid now in cash, would fairly and reasonably compensate Elisa [sic] Duron for her injuries, if any, that resulted from the occurrence in question?

Consider the elements of damages listed below and none other. Consider each element separately. Do not include damages for one element in any other element.

Element a. Physical pain and mental anguish.

Element b. Loss of earning capacity.

Element c. Disfigurement.

Element d. Physical impairment.

Element e. Medical care.

Do not reduce the amounts, if any, in your answers because of the negligence, if any, of Elisa [sic] Duron.

Answer in dollars and cents for damages, if any, that—

were sustained in the past:    ANSWER 5000

in reasonable probability will be sustained in the future.                        ANSWER 20,000

Duron had the burden to prove any damages at trial. On appeal, she must show that she proved the facts as a matter of law, or that the evidence was so overwhelmingly in her favor that the jury's

---

1. Dr. Dillman testified that worklife was the average number of years a high-school-educated female would have the capacity to work, taking

into consideration problems of death or illness or retirement. He stated that Duron had a worklife of 35.6 years.

verdict was manifestly wrong. *Yanez v. Branch & L.S.T. Sales,* 725 S.W.2d 343, 344 (Tex.App.—Corpus Christi 1987, no writ); *Davis v. Snider Indus.,* 604 S.W.2d 341, 346 (Tex.Civ.App.—Texarkana 1980, writ ref'd n.r.e.).

 The measure of damages in a personal injury case is not subject to precise mathematical calculation. Each case must be measured by its own facts, and considerable discretion and latitude must necessarily be vested in the jury. *Mills v. Jackson,* 711 S.W.2d 427, 434 (Tex.App.—Fort Worth 1986, no writ); *Rosenblum v. Bloom,* 492 S.W.2d 321, 325 (Tex.Civ.App.—Waco 1973, writ ref'd n.r.e.). The jury's province is to resolve the speculative matters of pain and suffering, future pain and suffering, future disfigurement, and future physical impairment, and set the amount of damages attributable thereto. *Nowsco Serv. Div. of Big Three Indus., Inc. v. Lassman,* 686 S.W.2d 197, 200 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.); *Rosenblum,* 492 S.W.2d at 325.

The jury determines the credibility of the witnesses and weighs the evidence. *Leyva v. Pacheco,* 163 Tex. 638, 358 S.W.2d 547, 549 (1962); *Balandran v. Furr's, Inc.,* 833 S.W.2d 648, 652 (Tex.App.—El Paso 1992, no writ). The jury may resolve conflicts and contradictions in the evidence by believing all, part, or none of any witness's testimony. *Harker v. Coastal Engineering, Inc.,* 672 S.W.2d 517, 520 (Tex.App.—Corpus Christi 1984, writ ref'd n.r.e.). One party does not have to negate by affirmative evidence the evidence presented by the other side, and the jury may simply disbelieve the evidence. *McInnes v. Yamaha Motor Corp., U.S.A.,* 659 S.W.2d 704, 708 (Tex.App.—Corpus Christi 1983), *aff'd,* 673 S.W.2d 185 (Tex. 1984), *cert. denied,* 469 U.S. 1107, 105 S.Ct. 782, 83 L.Ed.2d 777 (1985).

After weighing and considering all the evidence, we do not find the jury's answers to Special Question No. 3 to be so against the great weight and preponderance of the evidence that they were manifestly unjust, nor do we find error in the trial court's denial of the motion for a new trial.

By point two, Duron complains that the trial court erred in not granting a new trial because either insufficient evidence or no evidence existed to support the jury's calculation of damages. We hold that sufficient evidence existed to support the jury's damage award.

The trial court's judgment is AFFIRMED.