COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



|  | § |  |
|---|---|---|
| MARTHA H. SANCHEZ, | § | No. 08-15-00088-CV |
| Appellant, | § | Appeal from |
| v. | § | 109th District Court |
| HUGO C. BALDERRAMA AND MERIKA H. SANCHEZ, | § | of Andrews County, Texas |
|  | § | (TC # 18,405) |
| Appellees. | § |  |

## O P I N I O N

Martha Sanchez sued her daughter, Merika Sanchez and Hugo Balderrama for negligence in connection with an automobile accident that occurred on January 25, 2010. After a three-day jury trial, the jury found both Balderrama and Merika negligent and apportioned 40% responsibility to Balderrama and 60% to Merika. The jury also awarded Martha $1,000 for past physical pain and mental anguish. Martha filed a motion for new trial which the trial court denied. This appeal follows.

### FACTUAL SUMMARY

#### The Accident

On January 25, 2010, the rear of Balderrama's pickup truck collided with the front of Merika's pickup truck on the street near Balderrama's home. Balderrama was driving alone while Martha and Merika's two-year old son were passengers in Merika's pickup truck at the

time.  The parties disagreed on how the accident occurred.  Balderrama testified that he backed out of his driveway and onto the street and then traveled south on NW 2nd Street.  He was about halfway down his block when Merika's pickup truck struck his truck from behind.  Once he backed out of his driveway and put his car in drive to proceed southbound, he did not put his truck in reverse again.  He also testified that he was not on his cellphone at any time prior to the accident.  According to Merika, as she turned left onto NW 2nd Street, she noticed Balderrama's truck moving forward down the street.  He stopped his truck, put it in reverse and backed up towards her car.  When Merika saw Balderrama backing up, she placed her car in park and honked her horn.

### Seatbelt Use

During trial, Merika recalled that Martha complained of chest pain at the scene of the accident and had bruises on her chest.  Martha similarly testified that her chest pain was a result of the accident, specifically because of the seat belt she wearing at the time of the impact.  She also insisted that her chest never hit the dashboard.  However, the investigating officer testified that the accident report revealed that Merika was wearing her seatbelt at the time of the collision but Martha was not.

### Martha's Injuries

After the collision, an ambulance transported Martha to the Permian Regional Medical Center.  She told hospital personnel that she felt pain in her left foot, left ankle, right knee, back, and chest.  Upon arrival, her pain was so severe that she could hardly stand the stabbing pains.  The hospital records indicated that Martha's pain was only "mild."  The hospital x-rays revealed she had a broken left foot.

Upon discharge, the hospital gave Martha a boot to wear on her left foot as well as a pair of crutches. She declined to use a wheelchair to transport herself from the hospital to her car. Martha testified that she wore the boot on her left foot for approximately three to four months after the accident. Chiropractor Gregory Young, who treated Martha approximately two months, testified that his records indicated she was not wearing a boot for her first appointment. The hospital also recommended that Martha follow up with an orthopedic podiatrist for her foot, but Martha failed to do so because she could not afford it. Martha explained that she tried to seek medical attention but was unsuccessful because doctors would not accept her as a patient because she was without insurance and lacked sufficient resources to pay for her appointments. On cross-examination, Martha admitted that in fact she had medical insurance which paid her hospital bill after the accident. She also has high blood pressure, is under the care of a physician, and has taken medication for her condition for many years. Martha's son and Merika help Martha pay for her high blood pressure treatment, but she did not ask them to help her pay for treatment for the injuries she sustained in the accident.

Chiropractor Young agreed to treat Martha's injuries from the accident for $10 per visit. At trial, Martha discussed how her visits with Young failed to alleviate any of the pain she experienced and she left her last appointment with Young with pain in her left ankle, right knee, and right ankle. She specifically noted that during her last visit, on a scale of 1-10, her pain was still between a 5 and a 7. In her deposition, Martha admitted that her knee had not bothered her since her final visit with Young and that Young's treatment overall did help her feel better. Young also discussed how well Martha's final appointment went and how she expressed that she was ready to terminate her treatment with him. Young conducted a final examination and concluded that Martha had a full range of motion in her left foot; she was able to walk on her tip

3

toes across his room without any pain, which is indicative of ankle stability; neither ankle exhibited pain or swelling; her gait was normal; and she had full strength and function in her peroneal tendons. Usually a person that suffers from an ankle injury experiences pain while trying to walk on tip toes. Young then advised Martha to return for an appointment in the event her pain recurred. Martha never returned for treatment. Martha filed negligence claims against both Balderrama and Merika. Throughout the trial, Martha maintained that Merika in no way caused the accident, and that it was solely Balderrama who was at fault. Nonetheless, she explained that she sued her daughter so that a jury could hear both versions of the accident, rather than hearing only Balderrama's version of events.

## ADMISSION OF SEATBELT EVIDENCE

### Standard of Review

We review a trial court's rulings on the admission or exclusion of evidence under an abuse of discretion standard. *Broders v. Heise*, 924 S.W.2d 148, 151-52 (Tex. 1996). A person seeking to reverse a judgment based on evidentiary error need not prove that but for the error a different judgment would necessarily have been rendered, but only that the error probably resulted in an improper judgment. TEX.R.APP.P. 61.1; *Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W.3d 131, 144 (Tex. 2004); *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995); *McCraw v. Maris*, 828 S.W.2d 756, 758 (Tex. 1992); *King v. Skelly*, 452 S.W.2d 691, 696 (Tex. 1970). A successful challenge to evidentiary rulings usually requires the complaining party to show that the judgment turns on the particular evidence excluded or admitted. *See GT & MC, Inc. v. Texas City Ref., Inc.*, 822 S.W.2d 252, 257 (Tex.App.--Houston [1st Dist.] 1991, writ. denied); *Atlantic Mut. Ins. Co. v. Middleman*, 661 S.W.2d 182, 185 (Tex.App.--San Antonio 1983, writ ref'd n.r.e.).

4

We review the entire record, and require the complaining party to demonstrate that the judgment turns on the particular evidence admitted. *Armstrong*, 145 S.W.3d at 144; *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001); *Tex. Dep't of Transp. v. Able*, 35 S.W.3d 608, 617 (Tex. 2000). Whether erroneous admission of evidence is harmful is more a matter of judgment than precise measurement. *Armstrong*, 145 S.W.3d at 144. We may also consider the amount of emphasis placed on the erroneous evidence. *Id.*

### Did Martha Open the Door?

In her first point of error, Martha alleges that the trial court erred when it admitted evidence as to whether she was wearing her seat belt at the time of the collision. She almost exclusively relies on *Nabors Well Service, Ltd. v. Romero*, 456 S.W.3d 553 (Tex. 2015) to support her theory that the only time a party's non-use of a seat belt can be relevant is when there is expert testimony to prove that the failure to use a seat belt was a proximate cause of injuries. In response, both Appellees argue that Martha waived her right to complain about the admission of the seat belt evidence on appeal because she first introduced it at trial by way of an accident investigation report and her own testimony. Additionally, Balderrama maintains that he was entitled to raise evidence of seat belt usage, despite the fact that the trial court ultimately declined to submit to the jury an issue concerning Martha's seat belt usage.

The law is clear that "[a] party on appeal should not be heard to complain of the admission of improper evidence offered by the other side, when he, himself, introduced the same evidence or evidence of a similar character." *Varel Mfg. Co. v. Acetylene Oxygen Co.*, 990 S.W.2d 486, 499 (Tex.App.--Corpus Christi 1999, no pet.); *Pojar v. Cifre*, 199 S.W.3d 317, 336-37 (Tex.App.--Corpus Christi 2006, pet. denied)("A party on appeal may not object to the admission of incompetent evidence that he offered or brought out that related to an issue which

5

he first injected into the case."); *McInnes v. Yamaha Motor Corp.*, 673 S.W.2d 185, 188 (Tex. 1984); *Pouncy v. Garner*, 626 S.W.2d 337, 340 (Tex.App.--Tyler 1982, writ ref'd n.r.e.); *Hughes v. State*, 302 S.W.2d 747, 750 (Tex.App.--Eastland 1957, writ ref'd. n.r.e.). The record reflects that Martha was not only the first to discuss to the use of her seat belt, but she also introduced, at a pre-trial hearing, the accident investigator's report indicating that she was not wearing her seat belt at the time of the accident. We must conclude that Martha waived any error concerning the admission of the seat belt evidence. *See McInnes*, 673 S.W.2d at 187-88; *Varel Mfg.*, 990 S.W.2d at 499; *Pouncy*, 626 S.W.2d at 340; *Hughes*, 302 S.W.2d at 750.

Even if Martha had properly preserved the issue for our review, we find her argument without merit. In *Romero*, the Supreme Court responded to legislative changes and overruled decades of case law which had previously held that a plaintiff's failure to use a seat belt is inadmissible in automobile accidents. 456 S.W.3d at 555. The court held that relevant evidence of the use or nonuse of seat belts (or other pre-occurrence injury-causing conduct) is admissible if such conduct caused or was a cause of the damages sought. *Id.* at 563. In reaching this conclusion, the court elaborated:

> Seat-belt evidence has been unique only in that it has been categorically prohibited in negligence cases. With that prohibition lifted, our rules of evidence include everything necessary to handle the admissibility of seat-belt evidence. As with any evidence, seat-belt evidence is admissible only if it is relevant. *See* TEX.R.EVID. 401, 402. And relevance is the trial court's province. *See id.* 104(a).

*Romero*, 456 S.W.3d at 563. But the court expressly declined to hold that expert testimony would be required in all instances. *Id.* We agree with Balderrama, that while there will be cases requiring expert testimony to elaborate upon whether a plaintiff's use or non-use of a seat belt caused or contributed to injuries, this is not one of them.

More importantly, we wish to highlight the trial court's instruction to the jury, which we find dispositive of Martha's first point of error. Question No. 1 of the jury charge provides:

> Did the negligence, if any, of those named below proximately cause the occurrence in question?
>
> Answer 'Yes' or 'No' for each of the following:
>
> a. Hugo C. Balderrama
>
> b. Merika Sanchez

Question No. 3 provides:

> Do not reduce the amounts, if any, in your answers because of the negligence, if any, of Martha H. Sanchez.

Balderrama requested an instruction on Martha's own negligence. As illustrated above, the trial court declined to include Martha in the proportionate responsibility paragraph of the charge. Therefore, the jury was not permitted to consider whether the use or non-use of her seat belt caused or contributed to her injuries. Assuming without deciding that error occurred, any error was harmless because the admission of the seat belt evidence could not have resulted in an improper judgment. Issue One is overruled.

## PAST PAIN AND MENTAL ANGUISH

In Issue Two, Martha contends the jurors ignored the trial court's instructions and the great weight of the evidence admitted in awarding her only $1,000 in damages for past pain and suffering.

### Standard of Review

"When a party attacks the factual sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co. v. Francis*, 46 S.W.3d

7

237, 242 (Tex. 2001); *Benavente v. Granger*, 312 S.W.3d 745, 748 (Tex.App.--Houston [1st Dist.] 2009, no pet.). We consider and weigh all of the evidence and may set aside the verdict only if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Francis*, 46 S.W.3d at 242; *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

In conducting our review, we bear in mind that the jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *Golden Eagle Archery Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003); *Jones v. Tarrant Util. Co.*, 638 S.W.2d 862, 866 (Tex. 1982). We may not substitute our own judgment for that of the jury, even if the evidence would clearly support a different result. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 634 (Tex. 1986). Further, as fact finder, the jury is free to believe one witness and disbelieve another. *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 697 (Tex. 1986). The jury also resolves any inconsistencies in any witness's testimony. *Benavente*, 312 S.W.3d at 748; *Eberle v. Adams*, 73 S.W.3d 322, 327 (Tex.App.--Houston [1st Dist.] 2001, pet. denied).

Where, as here, someone suffers personal injuries, the damages fall within two broad categories: economic and non-economic damages. *Golden Eagle Archery*, 116 S.W.3d at 763. Texas recognizes the following categories of non-economic damages: pain, suffering, mental anguish, disfigurement, and physical impairment. *Id.* at 769. These categories of non-economic damages may overlap. *Id.* at 770.

The process of awarding damages for amorphous, discretionary injuries such as mental anguish or pain and suffering is inherently difficult because the alleged injury is a subjective, unliquidated, nonpecuniary loss. *Brookshire Bros., Inc. v. Wagnon*, 979 S.W.2d 343, 354 (Tex.App.--Tyler 1998, pet. denied); *see Duron v. Merritt*, 846 S.W.2d 23, 26 (Tex.App.--

8

Corpus Christi 1992, no writ). The process is not readily susceptible to objective analysis. *LaCoure v. LaCoure*, 820 S.W.2d 228, 234 (Tex.App.--El Paso 1991, writ denied). Because there are no objective guidelines to assess the monetary equivalent to such injuries, the jury is given broad discretion in awarding an amount of damages it determines appropriate. *Texarkana Mem'l Hospital, Inc. v. Murdock*, 946 S.W.2d 836, 841 (Tex. 1997); *Hicks v. Ricardo*, 834 S.W.2d 587, 591 (Tex.App.--Houston [1st Dist.] 1992, no writ). "The jury's province is to resolve the speculative matters of pain and suffering, future pain and suffering, future disfigurement, and future physical impairment, and set the amount of damages attributable thereto." *Duron*, 846 S.W.2d at 26; *see also J. Wigglesworth Co. v. Peeples*, 985 S.W.2d 659, 665 (Tex.App.--Fort Worth 1999, pet. denied); *Dico Tire, Inc. v. Cisneros*, 953 S.W.2d 776, 791-92 (Tex.App.--Corpus Christi 1997, pet. denied)(where the award is based on non-empirical damages such as mental anguish and pain and suffering, the court will generally leave that determination to the discretion of the jury). As long as sufficient probative evidence exists to support the jury's verdict, this court will not substitute its judgment for that of the jury. *J. Wigglesworth Co.*, 985 S.W.2d at 665. On appeal, we will set aside the verdict only where the record clearly indicates that the award was based on passion, prejudice, or improper motive, or is so excessive so as to shock the conscience. *HCRA of Texas, Inc. v. Johnston*, 178 S.W.3d 861, 871-72 (Tex.App.--Fort Worth 2005, no pet).

Generally, our starting point for conducting a factual sufficiency review is the charge and instructions to the jury. *Golden Eagle Archery*, 116 S.W.3d at 762. Here, Question No. 3 asked the jury to fill in six blanks: (1) past physical pain and mental anguish; (2) future physical pain and mental anguish; (3) past physical impairment; (4) future physical impairment; (5) past disfigurement; and (6) future disfigurement. The jury was instructed:

9

Consider the elements listed below and none other. Consider each element separately. Do not award any sum of money on any element if you have otherwise, under some other element, awarded a sum of money for the same loss. That is, do not compensate twice for the same loss, if any. Do not include interest on any amount of damages you find. Do not include any amount for any condition that did not result from the occurrence in question.

Answer separately, in dollars and cents, for damages, if any. Do not reduce the amounts, if any, in your answers because of the negligence, if any, of Martha H. Sanchez. Any recovery will be determined by the court when it applies the law to your answers at the time of judgment.

Do not include any amount for any condition resulting from the failure, if any, of Martha H. Sanchez to have acted as a person of ordinary prudence would have done under the same or similar circumstances in caring for and treating her injuries, if any, that resulted from the occurrence in question.

Unless the record demonstrates otherwise, we must presume the jury followed the instructions given. *Golden Eagle Archery*, 116 S.W.3d at 771.

### Does the Verdict Shock the Conscience?

Question No. 3 asked what sum of money would fairly and reasonably compensate Martha for her damages, if any, resulting from the injury in question. For physical pain and mental anguish sustained in the past, the jury's answer was $1,000.

A plaintiff who proves some physical injury may recover damages for past mental anguish. *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995). Texas permits recovery of mental anguish damages in virtually all personal injury actions, even where the defendant's conduct was merely negligent. *City of Tyler v. Likes*, 962 S.W.2d 489, 495 (Tex. 1997); *Krishnan v. Sepulveda*, 916 S.W.2d 478, 481 (Tex. 1995). Evidence of past pain and mental anguish may be proven through a plaintiff's testimony or other evidence, including circumstantial evidence. *Telesis/Parkwood Ret. I, Ltd. v. Anderson*, 462 S.W.3d 212, 239 (Tex.App.--El Paso 2015, no pet.). In the absence of direct evidence of pain, the jury is permitted to infer the occurrence of pain from the nature of the injury. *Escoto v. Estate of*

10

*Ambriz*, 200 S.W.3d 716, 730 (Tex.App.--Corpus Christi 2006), *rev'd on other grounds sub nom. Nabors Drilling, U.S.A., Inc. v. Escoto*, 288 S.W.3d 401 (Tex. 2009); *Johnston*, 178 S.W.3d at 871 (existence of conscious pain and suffering may be established by circumstantial evidence; pain and suffering may be inferred or presumed as a consequence of severe injuries); *Likes*, 962 S.W.2d at 495 (explaining that when serious bodily injury is inflicted, physical and mental suffering may be inferred); *see also Kennedy v. Missouri Pac. R.R.*, 778 S.W.2d 552, 557 (Tex.App.--Beaumont 1989, writ denied). The duration of the pain and mental anguish is also an important consideration for the fact finder. *Johnston*, 178 S.W.3d at 871.

When Martha arrived at the hospital, she told hospital personnel that she felt pain in her left foot, left ankle, right knee, back, and chest and that her pain was so severe she could hardly stand the stabbing pain. Yet her hospital records reflected that her pain was only "mild" upon arrival, although she did have a broken left foot. Upon discharge, Martha received a boot and a pair of crutches. She declined to use a wheelchair or any other kind of assistance to transport herself from the hospital to the car. Martha told the jury that she wore her boot for approximately three to four months after the accident, but Dr. Young's records indicated that she was not wearing a boot at her first appointment. He noted that if she had been wearing a boot, it would have been customary for his office to document it. The hospital also recommended that Martha follow up with an orthopedic podiatrist for her left foot, but she never did so. She told the jury that she did not have the money to do so. But the jury also heard evidence that Martha had insurance which paid her hospital bills.

Martha testified how her visits with Dr. Young were unsuccessful because he failed to alleviate any of the pain she experienced. Upon leaving her final appointment, she still felt pain in her left ankle, right knee, and right ankle. She testified differently on deposition when she

11

said she felt no pain at her last visit with Dr. Young and that his treatment helped her feel better overall. Dr. Young also testified about her progress, that the final appointment went well, and that Martha personally expressed that she was ready to terminate her treatment with him. Dr. Young then conducted a final evaluation and concluded that Martha had a full range of motion in her left foot; that she was able to walk across the room on her tip toes without any pain, which is something that a person suffering from an ankle injury would not be able to do; and full strength and function had returned to her peroneal tendons. Dr. Young told Martha to return if her pain should recur, but she never returned for treatment. The jury also heard Merika's testimony concerning Martha's demeanor both before and after the accident. Before the accident, Martha was very outgoing; she used to do her hair and makeup and enjoyed going out and being involved in her grandchildren's lives. After the accident, Martha no longer had a purpose or motive in life and never wanted to do anything or go anywhere. Martha also testified about the time she used to spend with her grandchildren and how she is no longer able to take them to the park because of her foot. Her life completely changed in every sense after the accident and she no longer felt like she was the same person.

Given the evidence before the jury, it is clear that the jury did not believe Martha's testimony as to the severity of her injuries. Therefore, having considered all the evidence before us, we cannot say that the jury's verdict was so contrary to the great weight and preponderance of the evidence that it was clearly wrong and unjust. We overrule Issue Two and affirm the trial court's judgment.

February 8, 2017

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rodriguez, and Hughes, JJ.
Hughes, J., not participating