

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| IN RE: RUDOLPH AUTOMOTIVE, LLC D/B/A RUDOLPH MAZDA and RUDOLPH CHEVROLET, LLC, | § § § | No. 08-18-00149-CV AN ORIGINAL PROCEEDING IN MANDAMUS |
| Relators. | § | |
| | § | |
| | § | |
| | § | |

**DISSENTING OPINION**

Who loses when a trial court grants a motion for new trial after a three-week trial? Well, the party that prevailed, or partially prevailed certainly does. But so do the twelve jurors who took three weeks out of their life to hear and decide an important dispute. Other litigants that could have used that three weeks to have their cases heard are also the losers, as they missed the opportunity to utilize valuable court time. And whenever the case is reset, another twelve jurors (plus alternates) will have to put their lives on hold for three weeks to possibly decide a gut-wrenching case. Moreover, another set of litigants will have to sit on the sidelines waiting their turn to try a case. We could add to the list of losers the third-party witnesses who may have to testify again, and of course the taxpayers who foot the bill for the court staff and facilities.

In sum, the cost to society is tangible, and accordingly, our Supreme Court has laid out a framework for review whenever a trial court exercises its discretion to grant a new trial. In my opinion, under that framework the real-parties-in-interest successfully challenge each of the four grounds advanced by the trial judge to set aside the three-week trial in this case. Accordingly, I respectfully dissent.

The Court correctly sets out a statement of the case and the standards for mandamus relief. In summary, the trial court's stated reason must be (1) legally appropriate and (2) specific enough to show that the trial court derived its reasons from the facts and circumstances of the case before it. *In re United Scaffolding, Inc.,* 377 S.W.3d 685, 688-89 (Tex. 2012). And if the stated reasons are appropriate, we are directed to also determine whether the trial court's articulated reasons find support in the underlying record. *In re Toyota Motor Sales, U.S.A., Inc.*, 407 S.W.3d 746, 756 (Tex. 2013). In this case, the trial court granted a new trial based on (1) an apparent conflict in the jury findings, (2) its purported reliance on one of our decisions that was later overturned, (3) an expert who violated a motion in limine, and (4) alleged inconsistency between the damages evidence and the damages findings. I address each in turn.

### Conflict in Jury Findings

The jury failed to find that Rudolph was negligent in Question Two and Three, but contrary to a conditioning instruction, assigned it a percentage of responsibility (10%) in Question Four. I agree with Rudolph that any conflict between the answers to those questions was waived when the issue was not raised before the trial court discharged the jury, and that in any event, the problem has a simple mathematical fix.

If a trial court intends to grant a new trial based on error occurring during trial, the error must have been the kind that would be reversible if appealed. That was the case in *In re Toyota*,

2

where the trial court granted a new trial because it thought Toyota violated a limine order excluding certain testimony. *In re Toyota Motor Sales, U.S.A., Inc.*, 407 S.W.3d 746, 749 (Tex. 2013) (orig. proceeding). Yet the Texas Supreme Court held that the record did not support the trial court's new trial order because the plaintiffs had not preserved the complaint at trial. *Id.* at 760 ("where, as here, the party that requested the limine order *itself* introduces the evidence into the record, and then fails to immediately object, ask for a curative or limiting instruction or, alternatively, move for mistrial, the party waives any subsequent alleged error on the point."). And here, no party objected that there was a conflict in the jury findings before the jury was discharged.

The majority blunts this point by holding that a post-trial motion can also preserve error, citing a plurality from *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479 (Tex. 2018). In *Menchaca*, four Justices agreed that a party should object to conflicting answers before the trial court dismisses the jury, but they went on to write that "[t]he absence of such an objection, however, should not prohibit us from reaching the issue of irreconcilable conflicts in jury findings." *Id.* at 526 (C.J. Hecht, J. Green, J. Guzman, and J. Brown, dissenting). Three Justices, however, opined that irreconcilable jury responses do not constitute fundamental error, and concluded that an objection was required prior to the jury's discharge. *Id.* at 510–20 (J. Boyd, J. Lehrmann, and J. Devine, plurality op.). Nonetheless, those same three Justices agreed that the case should be remanded for a new trial in the interest of justice, a power unique to the Texas Supreme Court, because of prior confusion in the error preservation requirements for irreconcilable jury responses. *Id.* at 520-21; *see also* TEX.R.APP.P. 60.3 (authorizing Texas Supreme Court to remand in interest of justice).

I would hew to the basic proposition that any error in conflicting jury findings needs to be raised while the jury is still present to resolve the conflict, and that post-trial motions do not

3

preserve error. *See Critical Path Resources, Inc. v. Huntsman Intl., LLC*, No. 09-17-00497-CV, 2020 WL 1291327, at *17 n.66 (Tex.App.--Beaumont Mar. 19, 2020, no pet.) (mem. op.) (holding under *Menchaca* that a post-verdict motion failed to preserve right to complain about any alleged conflict in jury findings). That is how Rule 295 reads. *See* TEX.R.CIV.P. 295 (if the "answers to the [jury] questions are in conflict, the court shall in writing instruct the jury in open court of the nature of the incompleteness, unresponsiveness, or conflict, provide the jury such additional instructions as may be proper, and retire the jury for further deliberations."). That is closest to our prior precedent. *Rhey v. Redic*, 408 S.W.3d 440, 464 (Tex.App.--El Paso 2013, no pet.). And that is in accord with the requirement for a "timely" objection which is an express requirement of Rule 33.1. TEX.R.APP.P. 33.1 (prerequisite for appeal requires a "a timely request, objection, or motion"). By raising the issue in a motion for new trial, the real-parties-in-interest leave the trial judge with only one remedy—declare the entire trial a nullity and start anew. Following Rule 295, however, would have at least provided the opportunity to fix any conflict between Question 2, 3, and 4. Borrowing from our criminal jurisprudence, the key to error preservation is for a litigant "to let the trial judge know what he wants, why he thinks himself entitled to it, and to do so clearly enough for the judge to understand him *at a time when the trial court is in a proper position to do something about it*." *Lankston v. State*, 827 S.W.2d 907, 909 (Tex.Crim.App. 1992) (emphasis supplied). The difference in possible remedies makes preservation through a motion for new trial a poor cousin to fixing the problem while the jury is still in the box. For that reason, I decline to join the majority approach of allowing for post-jury-discharge objections to conflicting findings.

But even beyond that preservation issue, I disagree that the conflict here is fatal and cannot be harmonized. This is not the first time that a jury has answered the negligence inquiry "no" but assigned a percentage of fault to the same party. *See Beltran v. Brookshire Grocery Co.*, 358

S.W.3d 263, 269 (Tex.App.--Dallas 2011, pet. denied) (collecting cases). And courts facing that predicament have concluded that "[i]ssues establishing or negating liability control over the issue which apportions, rather than establishes, negligence." *Id.*; *see also Garza v. Waco Scaffold and Shoring Co.*, 576 S.W.2d 442, 446 (Tex.App.--El Paso 1978, writ ref'd n.r.e.) ("the specific finding directed toward the liability aspect of the verdict controls over the general finding of comparative negligence"). And when faced with that prospect here, the trial court could still formulate a verdict by proportionally distributing the erroneous 10% finding over the three remaining percentages of responsibility. *See Garza*, 576 S.W.2d at 446; *Beltran*, 358 S.W.3d at 269; *Ingles v. Cohen*, 543 S.W.2d 455, 456–57 (Tex.App.--Waco 1976, writ ref'd n.r.e.). The real-parties-in-interest discount these cases because they predate broad form submission. But whether a jury answered a series of specific negligence questions "no" or one broad form question "no," and then answered an apportionment question inconsistently seems a distinction without a difference.

**The *Painter* Decision**

The trial court also based its new trial motion on the change in law when our decision in *Painter v. Amerimex* was overturned by the Texas Supreme Court just as the trial ended. *Painter v. Amerimex Drilling I, Ltd*., 511 S.W.3d 700 (Tex.App.--El Paso 2015), *rev'd*, 561 S.W.3d 125 (Tex. 2018). In *Painter*, the crew leader of an oil drilling rig drove his crew from a remote drilling site to company housing in a nearby town. The crew leader was in his personal vehicle and work had finished for the day. While en route, he collided with another vehicle and the resulting accident killed and injured several crew members. The victims sued the crew leader and his employer.

The employer obtained a summary judgment based on the argument that the employer could not be vicariously liable for the crew leader's conduct unless the employer controlled his actions at the time of the accident. *Id*. at 709. Attempting to reconcile conflicting authority on

5

that issue, we agreed with the trial court and upheld the summary judgment. 511 S.W.3d at 710-11, *citing*, *e.g.*, *London v. Texas Power & Light Co.* 620 S.W.2d 718, 719-20 (Tex.App.--Dallas 1981, no writ) ("The test of a master's liability for the negligent acts of his servant is whether *at the time and occasion in question*, the master has the right and power to direct and control the servant in the performance of the causal act or omission at the very instance of its occurrence.") (emphasis supplied) and *J & C Drilling Co. v. Salaiz*, 866 S.W.2d 632, 636 (Tex.App.--San Antonio 1993, no pet.) ("When the employer does not require any particular route, the employee is not engaged in the furtherance of the employer's business.").

The Texas Supreme Court disagreed with this Court, and some of the cases we relied on, instead holding that the relevant inquiry to impose vicarious liability was whether at the time of the negligent conduct, "the worker (1) was an employee and (2) was acting in the course and scope of his employment." *Painter II*, 561 S.W.3d at 131, 132. The element of control is bound up in the first question—employment status—and not the course and scope question. *Id.* at 132 ("Accordingly, we disagree with those courts of appeals that have tied the right-to-control analysis to the course-and-scope element of a vicarious-liability claim."). Moreover, that control should not be evaluated on a task-by-task basis. *Id.* at 138. And the course and scope question "hinges on an objective assessment of whether the employee was doing his job when he committed a tortious act. . . . The employer's right to control the work, having already been determined in establishing the employer-employee relationship, is not part of this analysis." *Id.* at 132-33. The Supreme Court remanded the case because the summary judgment record revealed factual disputes over whether the crew leader was in the course and scope of his employment by driving the crew to its housing. *Id.* at 139.

In this case, the trial court granted a new trial here in part because:

[T]he Texas Supreme Court decision in Painter v. Ameritex [sic] rendered on April 213,2018, [sic] the day of this Jury Verdict, was important law that affected the earlier decision s [sic] of this Court on motions filed by the parties, the evidence presented at trial and the charge given to the Jury. Based on the Painter opinion and other relevant decisions and authority as set forth in Plaintiff s Motion for Judgment NOV, it appears to this Court that it needs to reconsider whether Irma Vanessa Villegas and Christian Ruiz were injured in the course of employment as a matter of law which would make Plaintiff s claim a non-subscriber negligence case under 406.33 [sic] of the Texas Labor Code, and combined with the evidence admitted at trial, find negligence as a matter of law, thereby leaving only the issue of damages for determination.

I agree with Rudolph that the trial court's claim that *Painter* affected its earlier decisions on (1) pending motions, (2) the evidence presented at trial, and (3) the jury charge is either conclusory or is not supported by the record. The only motions that the parties point to were competing motions for summary judgment on the course and scope issue. Rudolph argued for a summary judgment in part based on our *Painter* decision (before it was reversed) but the trial court denied that motion. The trial court also denied the real-parties-in-interest's motion for summary judgment, but I fail to see how *Painter II* would have changed that ruling. In *Painter II*, after all, the court remanded the case for trial based on the existence of a fact issue. Consistent with that outcome, the trial court also submitted a course and scope question to the jury.

The majority's elongated discussion of *Painter* fails to point to a single evidentiary ruling, or other trial ruling colored by *Painter I*. Nor have the parties identified any defect in the charge occasioned by the trial court's reliance on *Painter I*. The accident at issue in *Painter* occurred well away from the worksite, and parties there argued the "coming and going" rule and cases applying that rule. 511 S.W.3d at 706.[1] The accident here occurred in Rudolph's parking lot. And the parties disputed whether the "access doctrine" which is an exception to the coming and going rule

---

[1] And a careful examination of the briefing when the case was before our Court would show that the plaintiffs primarily relied on a claimed exception to the coming and going rule carved out for travel to and from drilling rigs in remote locations. 511 S.W.2d at 706, *citing*, *e.g*., *Johnson v. Pacific Employers Indemnity Co.,* 439 S.W.2d 824 (Tex.1969). None of those cases, however, would have any application to the accident here.

would apply.  That doctrine allows employees to recover workers' compensation benefits if they are "injured while going to or from work, if on routes designated by their employers and at locations near where they work, . . . 'where such access route or area is so closely related to the employer's premises as to be fairly treated as a part of the premises.'"  *OCI Beaumont LLC v. Barajas*, 520 S.W.3d 83, 85 n.1 (Tex.App.--Beaumont 2017, no pet.), *quoting Tex. Comp. Ins. Co. v. Matthews*, 519 S.W.2d 630, 631 (Tex. 1974).  Moreover, the trial court actually included—at the real-parties-in interest's request—an access doctrine instruction in the charge.  Neither the trial court, nor the real-parties-in-interest articulate any additional or different charge language that would have been included had *Painter II* been released before, rather than after trial.

At most, the trial court states it might conclude that Irma Vanessa Villegas and Christian Ruiz were in the course and scope of employment as a matter of law based on the Texas Supreme Court's decision in *Painter*.  Setting aside whether that is even correct, nothing would have prevented the trial court from granting that relief post-trial based on the arguments and relief sought in "Plaintiff's Motion for Judgment Notwithstanding the Verdict and to Enter Judgment."  Our rules specifically allow a party to file motion for judgment notwithstanding the verdict, which the real-parties-in-interest did here.  TEX.R.CIV.P. 301.  But rather than grant that motion, the trial court set aside the results of a three-week jury trial because it *might* grant a JNOV or equivalent motion in the future.  I would find that to be an abuse of discretion.  If the trial court believes the law places certain of these actors in the course and scope of employment as a matter of law, the court should simply grant the JNOV and let that ruling be tested on appeal.[2]

---

[2] Nothing written here should be interpreted as suggesting that I would agree or disagree with such a ruling.  That issue is not before us.  I only conclude that a trial court cannot set aside a jury's verdict in favor of a new trial because the court *might* grant one party relief as a matter of law, particularly when a motion seeking such relief is already teed up before the trial court.

### The Expert's Testimony

As one of the last trial witnesses, Rudolph put on an expert toxicologist, Dr. Gary Wimbish, to opine in part that the alcohol that Ruiz drank would not have affected him on the night of the accident. Ruiz had a blood alcohol content of .02. Ms. Villegas had a BAC of .04. As the majority sets out, when Wimbish was cross-examined by plaintiffs' counsel, he was asked to agree that all the alcohol that Villegas had that day was provided by the Rudolph. He responded that "[m]y information is a bit different from that." Villegas's counsel then asked him what other information he had. He then relayed that Villegas was reported to have imbibed alcohol she brought to work. And when Villegas's counsel continued with that line of questioning—asking where he got that information from—Dr. Wimbish gratuitously added that he had seen clinical information that Ms. Villegas had a problem with alcohol such that she would wake up in the middle of the night and need to drink to get back to sleep. At that point, Villegas's counsel asked to approach the bench and moved for a mistrial. The trial court denied the mistrial (noting that Villegas had opened the door) but then formulated this specific instruction that each juror individually had to agree that they would abide by:

> COURT: You heard testimony from the witness that is not credible, is unreliable, and not evidence in this case. You are instructed to disregard the witness's testimony – Dr. Wimbish's testimony – on all evidence concerning Vanessa Villegas' prior use of alcohol before the date in incident – before this incident.
>
> Do you understand that, ladies and gentlemen?
>
> THE JURORS: Yes, sir.

I could certainly agree that the injection of some of the drinking testimony was error. The specific reference to a drinking problem and that Villegas needed to drink to go to sleep was not responsive to the question asked. The bench conference also suggests that the information was based on double, if not triple hearsay. The injection of these matters, accordingly, could be a valid

ground for ordering a new trial.

But for an error to serve as a valid basis for a new trial, it must be harmful which we define as probably causing the rendition of an improper verdict. TEX.R.APP.P. 44.1(a); *Diamond Offshore Servs. v. Williams*, 542 S.W.3d 539, 551 (Tex. 2018); *Loera v. Fuentes*, 511 S.W.3d 761, 776 (Tex.App.--El Paso 2016, no pet.). And that is where I get stumped. The trial court pointedly told the jury that the evidence was unreliable; each juror individually agreed to abide by that instruction. We generally presume that jurors will follow a court's instructions, and only a narrow class of statements defy our ability to instruct jurors. *See Living Centers of Texas, Inc. v. Penalver*, 256 S.W.3d 678, 680 (Tex. 2008) ("Typically, retraction of the argument or instruction from the court can cure any probable harm, but in rare instances the probable harm or prejudice cannot be cured."). Those rare circumstances include appeals to racial prejudice, unsupported and extreme attacks on opposing parties and witnesses, and accusing without evidence the opposing parties of witness manipulation or evidence tampering. *Id.* at 681 (collecting cases). The statement here falls somewhere outside that line of cases.

Nor does the record support that the jury violated the trial court's instruction. On liability, the jury found Villegas (who had more to drink than Ruiz) slightly less at fault than Ruiz. The accident occurred when Ruiz, who had just backed out of a parking spot, put his truck into drive and drove into Villegas who was walking in front of his truck. The jury could have concluded that both driver and pedestrian failed to keep a proper look-out. Stated otherwise, there is nothing surprising about the finding of fault, or the apportionment of liability. Nor does a $3.87 million verdict call out that the jury disregarded the damages testimony because of the single isolated statement of the witness.

10

## The Damages Findings

The majority does not reach the fourth basis for the trial court's order—the amount of non-economic damages awarded. Because I would find each of the stated reasons for the new trial improper, I briefly address the issue.

The jury awarded a total of $4.02 million in damages, $3.87 million to Villegas (who was hit by the truck) and $150,000 to Juarez (Villegas's adult daughter). The jury awarded Villegas these specific sums:

| | |
|---|---|
| Medical care in the past: | $630,000 |
| Medical care in the future: | $2,500,000 |
| Physical pain and suffering in the past: | $25,000 |
| Physical pain and suffering in the future: | $25,000 |
| Physical impairment in the past: | $25,000 |
| Physical impairment in the future: | $25,000 |
| Past disfigurement: | $0 |
| Future disfigurement: | $200,000 |
| Loss of past earning capacity: | $150,000 |
| Loss of future earning capacity: | $240,000 |
| Past mental anguish: | $25,000 |
| Future mental anguish: | $25,000 |

The awards for Juarez are as follows:

| | |
|---|---|
| Past household services: | $0 |
| Future household services: | $150,000 |
| Past loss of parental consortium: | $0 |

Future loss of parental consortium:          $0

The trial court also granted a new trial based on the jury's answers to eight of the damage categories, stating as follows:

> As an additional and independent basis for new trial, the Court finds that the determination of Zero (-0-) Damages for past disfigurement of Irma Vanessa Villegas . . . as well as Zero (-0-) Damages for daughter Andrea Juarez for Past household services and for Past and future loss of parental consortium  completely ignore the undisputed facts, and the other damages [for past and future physical pain and physical impairment] fix an amount neither authorized nor supported by the evidence and is contrary to the great weight of the evidence. (Internal reference to the damage question numbers omitted).

The trial court further stated, and I accept as true, that the "undisputed evidence proved that Irma Vanessa Villegas suffered permanent irreversible traumatic brain injury and was paralyzed on one side of her body[.]"  The trial court summarized the trial evidence as including "controverted evidence of constant daily pain" and her "impairment in virtually every movement."  Villegas was confined to a bed and wheelchair, and she needed round-the-clock assistance.  She suffered "permanent damage to her mental faculties" such that at times she did not know her daughter, her grandchildren, and her sisters.

Rule 320 expressly provides that "[n]ew trials may be granted when the damages are manifestly too small or too large."  TEX.R.CIV.P. 320.  And our high court has stated "If the jury's failure to award damages or the amount of damages awarded is so against the great weight and preponderance of the evidence as to be manifestly unjust, shock the conscious, or clearly demonstrate bias, then a new trial would be required."  *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 773 (Tex. 2003).

But any view of damages is also tempered by the jury's wide discretion in awarding non-economic damages.  *Sanchez v. Balderrama*, 546 S.W.3d 230, 237 (Tex.App.--El Paso 2017, no pet.) ("Because there are no objective guidelines to assess the monetary equivalent to [mental

12

anguish or pain and suffering], the jury is given broad discretion in awarding an amount of damages it determines appropriate."). This is because the "process of awarding damages for amorphous, discretionary injuries such as mental anguish or pain and suffering is inherently difficult because the alleged injury is a subjective, unliquidated, nonpecuniary loss." *Id*. We recently quoted a prior sister court's view that it is the jury's province "to resolve the speculative matters of pain and suffering, future pain and suffering, future disfigurement, and future physical impairment, and set the amount of damages attributable thereto." *Id.*, *quoting Duron v. Merritt*, 846 S.W.2d 23, 26 (Tex.App.--Corpus Christi 1992, no writ).

We also must acknowledge the possible overlap between the damage categories here-- physical impairment, physical pain and suffering, disfigurement, and pain and mental anguish. *See Golden Eagle Archery, Inc.*, 116 S.W.3d at 771 (noting that physical impairment, physical pain and suffering, disfigurement, and mental anguish can encompass the same loss). None of these terms were defined by the charge. So, while we assume the jury followed the instruction not to award the same damages in more than one damage category, we must look to all the awards in the several categories to determine if the jury failed to properly award damages. *Id*.

The trial court here first focused on the failure of the jury to award any sum for past disfigurement (while awarding a substantial sum for future disfigurement). The accident resulted in a portion of Villegas's skull being removed, leaving an indentation on her forehead and other scarring from one side of her skull to the other. There was some testimony that she bemoaned the misshapenness of her head and was given to frequent crying. "Disfigurement has been defined as that which impairs the appearance of a person, or that which renders unsightly, misshapen or imperfect, or deforms in some manner." *Doctor v. Pardue*, 186 S.W.3d 4, 18 (Tex.App.--Houston [1st Dist.] 2006, pet. denied). "The matter of future disfigurement is necessarily speculative and

13

there is no mathematical yard stick by which one can measure damages for it." *Mauricio v. Cervantes*, No. 04-16-00260-CV, 2017 WL 2791324, at *3 (Tex.App.--San Antonio June 28, 2017, no pet.) (mem. op.).

Rudolph postulates that the jury awarded nothing in the past for disfigurement because Villegas as of the time of trial did not perceive her own change in appearance. It suggests that the large future disfigurement award evidences the jury's belief she would later improve and come to learn of her disfigurement, and only then suffer the loss.[3] I am unpersuaded by that specific argument. But I agree that the compensable aspect of disfigurement is how it affected Villegas, which surely encompasses her mental suffering from the injury. It could also encompass the loss of enjoyment of life that is part and parcel of physical impairment. *See Golden Eagle Archery, Inc.,* 116 S.W.3d at 772. That overlap necessitates that a court also consider any awards for mental anguish, pain and suffering, and physical impairment in deciding if the jury truly ignored the disfigurement. And the jury did collectively award $75,000 in those categories to Villegas. Accordingly, it is incorrect to conclude the jury failed to consider at all the disfigurement in its damage calculations.[4]

The trial court also focused on the lack of awards for loss of parental consortium. The relationship here was between an adult child and parent. Juarez presented testimony of her belief as to the destruction of that relationship. Relators point out, however, that her credibility was challenged through cross examination on at least two matters where the jury might have concluded that Juarez was untruthful or prone to embellishment. It of course is not our role to decide whether

---

[3] Tragically, during the pendency of this appeal, the real-parties-in-interest informed us that Villegas has passed away.

[4] This overlap also distinguishes the principal case that the real-parties-in-interest rely on, *Doctor v. Pardue*. In that case, the jury awarded no sums for any of the past categories of non-pecuniary loss, but substantial sums for all the future awards. 186 S.W.3d at 18.

she was truthful or not—that is reserved for the jury. *Benoit v. Wilson*, 239 S.W.2d 792, 796 (Tex. 1951) ("The jury, not the court, is the fact finding body. The court is never permitted to substitute its findings and conclusions for that of the jury. The jury is the exclusive judge of the facts proved, the credibility of the witnesses and the weight to be given to their testimony."). Accordingly, the jury was entitled to disbelieve her testimony and not award consortium damages. *Perez v. Lopez*, 74 S.W.3d 60, 66 (Tex.App.--El Paso 2002, no pet.) (in upholding award of no damages for loss of consortium "it was [the jury's] function to accept or reject any, part, or all of the witnesses's testimony . . . .").

The trial court also found fault with the jury's answer to the loss of household services question. An award for household services compensates a family member for the loss of household services that the *injured* party would have provided the family member but for the injury. *See* COMM. ON PATTERN JURY CHARGES, STATE BAR OF TEX., TEXAS PATTERN JURY CHARGES: GEN. NEGLIGENCE, PJC 28.4 (2016). The jury question here, however asked for the "[r]easonable value of household services and personal care in the past provided by Andrea Juarez for the benefit of Irma Vanessa Villegas." There was no evidence that Juarez provided household services to Villegas (as opposed to Villegas providing services to Juarez). While that may have been a typographical error as the real-parties-in-interest suggest, it was the charge given and which the jury answered.

The balance of the trial court's rationale is that the series of $25,000 awards for past and future physical impairment, and past and future pain and suffering are "neither authorized nor supported by the evidence and is contrary to the great weight of the evidence." It is unclear if the rationale here is grounded solely in a factual sufficiency challenge or includes legal sufficiency as well. *See In re Bent*, 487 S.W.3d 170, 179 (Tex. 2016) (noting trial court's muddled legal- and

15

factual-sufficiency evaluation of the evidence).  As a legal insufficiency matter, the argument fails because the evidence could never establish a particular sum for a non-pecuniary award as a matter of law.  As a factual insufficiency challenge, the order fails to explain how the particular amounts—given the jury's wide latitude, shock the conscious or point to an award based on some bias.

For these reasons, I respectfully dissent.


JEFF ALLEY, Chief Justice

December 30, 2020

Before Alley, C.J., Rodriguez, and Palafox, JJ.