

NUMBER 13-19-00154-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN THE ESTATE OF CLARALYN BROOKS TRICKETT, DECEASED

On appeal from the Probate Court No. 1
of Bexar County, Texas.

# MEMORANDUM OPINION ON REHEARING

**Before Chief Justice Contreras and Justices Longoria and Hinojosa
Memorandum Opinion on Rehearing by Justice Longoria**

Appellees Marcelle Winifred Swearingen (a/k/a Marcelle Brannen) and Nancy Lee Woodmansee initiated an heirship proceeding on behalf of the blood relatives of the late Claralyn Brooks Trickett to establish their status as Claralyn's sole heirs and rightful owners of an undivided 1/32 non-participating royalty interest in lands located in Bexar and La Salle Counties in Texas. Appellants Richard Howard Bowerman, Steven Robert Bowerman, Esther Michele Daugherty, and Bruce E. White opposed the action and claimed an interest in the estate through Robert Bowerman, whom they claimed was

married to Claralyn before she passed away.[1] A jury found that Robert Bowerman's marriage to Claralyn was void, and the probate court entered a final judgment in favor of appellees, declaring that appellants were not heirs and had no claim to the royalty interests.

Appellants raise eleven issues on appeal: (1) the appellees' claim is barred by the statute of limitations; (2) appellees waived their heirship claim by not presenting it to the jury; (3) the trial court improperly received and considered additional evidence after the jury had reached its verdict; (4) the trial court did not have jurisdiction to declare a marriage void; (5) the trial court erred by failing to enter judgment on the verdict; (6) the trial court failed to properly instruct the jury on the presumption of validity of the most recent marriage; (7) the trial court failed to instruct the jury concerning the presumption that a foreign government complied with all formalities when it issued a marriage certificate; (8) there was insufficient evidence to support a finding that no divorce occurred; (9) the trial court improperly excluded portions of an affidavit from Jane Bowerman; (10) the trial court failed to exclude improperly disclosed witnesses and evidence; and (11) the relief sought by appellees is barred by laches. We affirm.[2]

---

[1] Richard Howard Bowerman, Steven Robert Bowerman, and Esther Michele Daugherty are children of Robert Bowerman. Bruce E. White was Esther's attorney in the will contest she filed against Richard after Richard reneged on his promise not to probate Robert's holographic will—which excluded Esther and Steven. As payment, Bruce took a quarter of Esther's interest in Robert's estate.

[2] On May 14, 2020, this Court issued a memorandum opinion and judgment reversing and rendering in favor of the appellants. *See Estate of Trickett*, No. 13-19-00154-CV, 2020 WL 2487564, at *1 (Tex. App.—Corpus Christi–Edinburg May 14, 2020, no pet.) (mem. op.). On May 29, 2020, appellees filed a motion for rehearing and a motion for en banc consideration. In their motions, the appellees urged us to reconsider our ruling in light of *Estate of Ripley*, No. 04-18-00968-CV, 2019 WL 4179128, at *1 (Tex. App.— San Antonio Sept. 4, 2019, pet. denied), a case from the San Antonio Court of Appeals that was issued the day after appellants filed their reply brief. We requested and received a response from appellants to address *Ripley*.

Having considered appellees' motions for rehearing and en banc consideration and the appellants' response, we deny the motion for en banc consideration but grant the motion for rehearing. We recognize that the present case is before this Court on transfer from the Fourth Court of Appeals in San Antonio

2

## I. BACKGROUND

Robert Bowerman and Claralyn Trickett were married in Tijuana, Mexico on August 30, 1963. Several months later, Claralyn turned forty. Under the terms of Claralyn's mother's will, Claralyn inherited several mineral interests in Bexar and La Salle Counties; these interests remained in a trust until Claralyn turned forty. Claralyn's cousin, P.H. Swearingen, served as the executor of Claralyn's mother's estate. The affidavit filed by P.H. in the Bexar County deed records on December 18, 1963 stated:

> Clara May Brooks Trickett died on January 14, 1951 . . . her daughter, Claralyn Brooks Trickett (now Claralyn T. Bowerman) was [the] sole residuary beneficiary under the will . . . . That said beneficiary is now 40 years of age and said Trust has terminated and the assets of said Estate delivered to said beneficiary, who is Mrs. Claralyn T. Bowerman . . . and title, by virtue of said Will, is now vested in the said Claralyn T. Bowerman.

In April of 1964, P.H. filed three deeds to convey property from Clara's testamentary trust to Claralyn. These were filed in Bexar and La Salle Counties and they referred to Claralyn as "Claralyn T. Bowerman."

In November of 1964, P.H. filed an Affidavit of Independent Executor Closing Estate in Bexar County, declaring: "pursuant to the provision of said Will, all of the residuary assets of said estate have been delivered to the residuary beneficiary, Claralyn Brooks Trickett Bowerman, wife of Robert Bowerman, and all claims have been released."

Over the next nine years, Robert and Claralyn lived together and bought and sold property together in California as husband and wife. At no point did they live in Texas. Claralyn became very ill and eventually died on December 24, 1972. Her relatives in San

---

pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001. Accordingly, we also recognize that we must apply the precedent of the San Antonio Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3.

Therefore, we withdraw our memorandum opinion and judgment of May 14, 2020, and issue this memorandum opinion and judgment in their place.

3

Antonio paid for her funeral and burial in San Antonio; they also paid for Robert's travel expenses to the burial. Claralyn was buried under a tombstone labeled "Claralyn Trickett Bowerman." Her death certificate identified her as "Claralyn Trickett Bowerman" and identified her spouse as "Robert."

Between October 2009 and February 2011, several memoranda of oil and gas leases and distribution deeds were recorded in La Salle County, conveying title to the royalty interests in question from Robert Bowerman to appellants. Robert Bowerman passed away on January 21, 2010. During Robert Bowerman's probate proceedings, appellants filed several deeds and affidavits in Bexar and La Salle Counties claiming ownership to the royalty interests through their relationship to Robert Bowerman.

On July 1, 2013, appellees filed a quiet title action in Bexar County alleging that appellants' affidavits and deeds were "clouding title" to appellees' royalty interests.[3] Appellants, however, requested that the quiet title action be abated until there was an official declaration of Claralyn's heirs. The trial court abated the case.

On March 25, 2015, appellees filed an application to determine heirship in La Salle County. By a joint request by both parties, the case was transferred to a probate court in Bexar County. Per appellees' amended petition, the only relief requested was that the

> Court declare the identity of Decedent's heirs and the respective shares and interest of each in the Decedent's estate; award them their costs and reasonable and necessary attorney's fees as requested herein; and the Court determine that no necessity exists for an administration of Decedent's estate.

---

[3] Appellees Marcelle Winifred Swearingen and Nancy Lee Woodmansee are both maternal second cousins of Claralyn Trickett.

4

Marcelle also filed a petition to recover money belonging to the estate to recoup the royalty proceeds that appellants wrongfully collected. However, upon appellants' request, this suit was also abated until the completion of the heirship proceeding.

In the heirship proceeding in the probate court, appellees argued that they were the rightful heirs to Claralyn's estate because Robert never divorced his prior wife, Jane Bowerman, before marrying Claralyn in Mexico, making Robert and Claralyn's marriage void. Robert first married Sarah Louise Embry in 1941. Robert and Sarah were divorced in 1945. Robert married Jane in 1946. Jane and Robert lived in an apartment in San Mateo County, California. Richard and Steven are the two children of Robert and Jane. Robert and Jane announced sometime in the spring of 1963 that they were going to get a divorce, and Robert moved out shortly thereafter. Robert married Claralyn less than a year later, in the fall of 1963. However, appellees argued that the San Mateo County Clerk's office contains no record of Robert and Jane's divorce. Appellees further argued that not a single county in California or Nevada contains a record of the divorce.[4] On the other hand, appellants asserted that their Mexican marriage certificate, which is in Spanish, plainly states that the official performing the marriage ceremony was presented with the divorce decrees from their previous marriages. Appellants also offered an affidavit from Jane, which averred that she and Robert were divorced before Robert married Claralyn. This affidavit was executed in 2011, one year before Jane passed away.

Appellants filed a Rule 91a motion to dismiss, and later, a motion for summary judgment, both arguing that the probate court lacked jurisdiction to declare Robert

---

[4] Below, appellants had argued, as one possible explanation as to why the divorce record could not be located in California, that perhaps the divorce record was in Nevada. This argument was based on the testimony of an expert who asserted that during the time frame in question, "[i]f you wanted a quickie divorce, you went to Nevada."

Bowerman and Claralyn Trickett's marriage as void and that the statute of limitations had expired on the appellees' heirship claim. Both motions were denied.

In a docket control order issued on January 8, 2018, the trial court set the case for jury trial to begin on May 21, 2018. The order mentioned that the setting was for "final trial on the merits disposing of all pending issues to date of trial on the heirship determination in this cause." Trial began on May 21, 2018. Appellees did not submit a question on heirship. Appellants objected to the exclusion of a question on heirship, but the trial court submitted the case to the jury solely on the question of whether Robert and Claralyn's marriage was void. The jury returned a unanimous verdict finding that the marriage was void.

Six months later, the trial court held a hearing to determine the identity of Claralyn's heirs and their respective shares of her estate. After the trial court received the testimony and report of the attorney ad litem, the court entered its judgment identifying all of Claralyn's heirs and their respective shares of her estate. Appellants were not named as heirs in the judgment. This appeal followed.

## II. JURISDICTION

In their fourth issue, which we address first, the appellants argue that the trial court did not have jurisdiction to declare the marriage void.

### A. Standard of Review & Applicable Law

A trial court must have jurisdiction to adjudicate the subject matter of a cause of action. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225–28 (Tex. 2004). Whether the trial court possesses jurisdiction is a question of law that is reviewed de novo. *See id*. at 228. Subject matter jurisdiction cannot be waived and may be raised

6

at any time. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd*., 852 S.W.2d 440, 445 (Tex. 1993).

Probate courts may conduct an heirship proceeding when "a person dies intestate owning or entitled to property in this state and there has been no administration in this state of the person's estate." TEX. EST. CODE ANN. § 202.002(1). In a probate proceeding, a probate court may determine the heirs of the decedent and the heirs' respective shares and interests. *See id.* § 202.001. "The court exercising original probate jurisdiction also has jurisdiction of all matters related to the probate proceeding." *Id.* § 32.001.

## B. Analysis

Appellants argue that a court's authority to declare a marriage void is solely founded in the Texas Family Code. *See* TEX. FAM. CODE ANN. § 6.307. According to § 6.307, a trial court may "declare a marriage void only if: (1) the purported marriage was contracted in this state; or (2) either party is domiciled in this state." *Id.* Appellants argue the trial court had no jurisdiction to declare the marriage void because Claralyn was not married to Bowerman in Texas and neither of them were ever domiciled in Texas. However, Chapter 6 of the Texas Family Code concerns suits for dissolution of marriage. *See id.* This is not a standalone suit for dissolution of marriage; instead, this is a "probate proceeding." TEX. EST. CODE ANN. § 31.001(3). Appellants do not dispute that the court had jurisdiction to determine the heirs of Claralyn and their respective shares. And because the trial court had jurisdiction over "all matters related to the probate proceeding," *see id.* § 32.001, the trial court had jurisdiction concerning the validity of the marriage in order to appropriately determine the heirs and their shares. We overrule appellants' fourth issue.

7

## III. STATUTE OF LIMITATIONS

In their first issue, appellants argue that the relief sought by appellees is barred by the statute of limitations.

### A. Standard of Review & Applicable Law

"Whether a cause of action is barred by limitations is a question of law that appellate courts review de novo." *Abrams v. Salinas*, 467 S.W.3d 606, 609 (Tex. App.—San Antonio 2015, no pet.).

Section 202.0025 of the Texas Estates Code provides: "Notwithstanding Section 16.051, Civil Practice and Remedies Code, a proceeding to declare heirship of a decedent may be brought at any time after the decedent's death." TEX. EST. CODE ANN. § 202.0025. However, § 202.0025 applies only to the estate of decedents who die on or after January 1, 2014. Act of May 27, 2013, 83rd Leg., R.S., ch. 1136, § 62(f), 2013 Tex. Gen. Laws 2737, 2754.[5]

Section 16.051 of the Texas Civil Practice and Remedies Code proclaims that "[e]very action for which there is no express limitations period, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues." TEX. CIV. PRAC. & REM. CODE ANN. § 16.051. The Texas Supreme

---

[5] In enacting § 202.0025, the Texas Legislature made two observations. First, it stated that the changes made by § 202.0025

> apply only to the estate of a decedent who dies on or after the effective date of this Act. The estate of a decedent who dies before the effective date of this Act is governed by the law in effect on the date of the decedent's death, and the former law is continued in effect for that purpose.

Act of May 27, 2013, 83rd Leg., R.S., ch. 1136, § 62(f), 2013 Tex. Gen. Laws 2737, 2754. The Texas Legislature also noted that § 202.0025 "is intended to clarify current law in regard to the commencement of proceedings to declare heirship, and an inference may not be made regarding the statute of limitations for a proceeding to declare heirship filed before the effective date [January 1, 2014] of this Act." *Id.*, § 62(g), 2013 Tex. Gen. Laws 2737, 2754; *see Dickson v. Simpson*, 807 S.W.2d 726, 727 (Tex. 1991) ("The statutes in force at the time of death govern the disposition of the decedent's estate").

Court has acknowledged that "[w]hen an heirship claim is brought after an administration of the decedent's estate or a conveyance of the decedent's property to a third party, courts have applied the four-year residual limitations period of Texas Practice and Remedies Code section 16.051." *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 509 (Tex. 2010); *see John G. & Marie Stella Kenedy Mem'l Found. v. Fernandez*, 315 S.W.3d 515, 518 (Tex. 2010) (making the same observation). However, the San Antonio Court of Appeals has recently interpreted *Fernandez* to conclude that "no limitations period applies to heirship proceedings absent the existence of a prior administration of the decedent's estate or a prior conveyance of the decedent's property to a third party." *Estate of Ripley*, No. 04-18-00968-CV, 2019 WL 4179128, at *3 (Tex. App.—San Antonio Sept. 4, 2019, pet. denied).

## B. Analysis

Appellants contend that appellees' case is governed by the general four-year statute of limitations. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 16.051. Appellees argue that under both current and pre-existing law, they are not subject to any statute of limitations and that they could file an heirship proceeding at any point in time after Claralyn's death. *See* TEX. EST. CODE ANN. § 202.0025. In light of the direct case law authority interpreting this statute, we agree with appellees.

Because this is a transfer case from the San Antonio Court of Appeals, we are bound to apply the precedent of the San Antonio Court of Appeals to the extent it differs from our own. *See* TEX. R. APP. P. 41.3. And the San Antonio Court of Appeals has clearly concluded that limitation periods apply to heirship proceedings only when there has either been a prior administration of the decedent's estate or a prior conveyance of the

9

decedent's property to a third party. *See Ripley*, 2019 WL 4179128, at *3. In the present case, there was no prior administration of the decedent's estate and there has been no prior conveyance of the decedent's property to a third party. Therefore, no limitations period applies. *See id.* We overrule appellants' first issue.

## IV. WAIVER

In their second issue, appellants assert that appellees waived their heirship claim by failing to request a jury charge question on the issue.

Below, appellants submitted a jury question on heirship, which was denied by the trial court. On appeal, appellants assert that "[a]ll independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived." TEX. R. CIV. P. 279. Furthermore, appellants argue that the controlling issue in the heirship proceeding was the identity of the heirs. Therefore, appellants claim that appellees have waived any right to have a judgment entered declaring them to be Claralyn Bowerman's heirs. Appellees argue that the heirship question itself was not the controlling issue.

We find that appellees did not waive their heirship claim. The trial evidence below included uncontroverted testimony from genealogist Dee Dee King setting forth the identity of Claralyn's heirs in the absence of a valid marriage with Robert Bowerman. In other words, the evidence conclusively established that if the marriage between Robert and Claralyn is void, then appellees are the heirs, not appellants. Conversely, based on the evidence produced at trial, it is undisputed that if there was a valid marriage with Robert, then appellants are the rightful heirs, not appellees. Because this issue was

10

conclusively established by the evidence, the lack of a jury charge question is not fatal to appellees' heirship claim. *See id.* We overrule appellants' second issue.

## V. POST-TRIAL EVIDENCE

In their third issue, the appellants argue that the trial court improperly heard additional evidence after the jury rendered its verdict.

In the trial below, the jury reached a verdict finding that the marriage between Claralyn and Robert was void. At a hearing six months later, after receiving an affidavit from the attorney ad litem, the trial court entered a judgment reflecting the appellees as the heirs. The appellants argue that "in a jury case no evidence on a controversial matter shall be received after the verdict of the jury." TEX. R. CIV. P. 270. Appellees assert that the heirship question was not controversial and that the trial court may hear additional evidence after a trial. *See id.* We agree with appellees.

In its entirety, rule 270 of the Texas Rules of Civil Procedure states: "When it clearly appears to be necessary to the due administration of justice, the court may permit additional evidence to be offered at any time; provided that in a jury case no evidence on a controversial matter shall be received after the verdict of the jury." *Id.* As we discussed above, the heirship question itself was not controversial. At the post-trial hearing, the trial court made the following declaration:

> I believe that the jury was presented the appropriate question, the one question that we had a question of fact on, and that from that question of fact answer the jury would lead to a different heirs and shares for each side. . . . And that was the controverted issue that went to the judge—went to the jury. The jury made its finding. With that finding would flow the list of heirs.
>
> As far as shares go, I believe that the Court needs to determine that, and always double-checks the math of anyone. I believe the central issue that

11

we had was just what the jury received: Was this a valid marriage, yes or no. . . .

So that's how we're going to proceed. I am not taking new evidence. I'm using the evidence from the jury. I am going to entertain looking at the actual names, addresses, and shares of the heirs that would flow after the jury made their decision on the validity of that marriage.

In other words, the trial court was not receiving new evidence on a controversial matter. *See id.* Instead, the trial court was merely verifying the names and shares of the heirs to enter a judgment consistent with the jury's finding. Appellants never controverted the names and shares of the heirs on Claralyn's side. We overrule appellants' third issue.

## VI. JURY VERDICT

In their fifth issue, the appellants argue that the trial court failed to enter a judgment on the verdict. As we discussed above, once the marriage was determined to be void, there was no controversy over who the heirs were. The jury found that the marriage between Claralyn and Bowerman was void. Subsequently, the trial court entered a judgment declaring the names and shares of the respective heirs that flowed from the jury's finding. The trial court entered a judgment consistent with the jury's verdict. *See* TEX. R. CIV. P. 300, 301. We overrule appellant's fifth issue.

## VII. JURY INSTRUCTION ON PRESUMPTIONS

In their sixth issue, appellants argue that the trial court failed to properly instruct the jury on the presumption of validity accorded to the most recent marriage. And in their seventh issue, appellants argue that the trial court erred by failing to instruct the jury on the Texas presumption that a foreign government complied with all formalities when it issued a marriage certificate.

12

However, "[a] presumption is nothing more than a rule for the guidance of the trial court in locating the burden of production at a particular time." *In re Estate of Check*, 438 S.W.3d 829, 835 (Tex. App.—San Antonio 2014, no pet.). Thus, a presumption "may not properly be the subject of an instruction to the jury." *Tex. A & M Univ. v. Chambers*, 31 S.W.3d 780, 783–84 (Tex. App.—Austin 2000, pet. denied) (quoting *Armstrong v. West Tex. Rig Co.,* 339 S.W.2d 69, 74 (Tex. App.—El Paso 1960, writ ref'd n.r.e.); *see Roytberg v. Wal-Mart Stores, Inc.*, 111 S.W.3d 843, 845 n.2 (Tex. App.—Dallas 2003, no pet.). Accordingly, the trial court did not err in failing to include an instruction on these marital presumptions. We overrule appellants' sixth and seventh issues.

## VIII. LEGAL & FACTUAL SUFFICIENCY

In their eighth issue, appellants argue that there was insufficient evidence to establish that Robert and Claralyn's marriage was void.

### A. Standard of Review & Applicable Law

> Evidence is legally insufficient to support a jury finding when (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of a vital fact.

*Bustamante v. Ponte*, 529 S.W.3d 447, 455–56 (Tex. 2017); *see City of Keller v. Wilson,* 168 S.W.3d 802, 810 (Tex. 2005). More than a scintilla of evidence exists when the evidence supporting the finding, as a whole, "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Merrell Dow Pharms. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997); *Transp. Ins. v. Moriel,* 879 S.W.2d 10, 25 (Tex. 1994). If the evidence is so weak as to do no more than create a mere surmise or suspicion of its existence, its legal effect is that it is no evidence. *See Ford Motor Co. v.*

13

*Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). Conversely, evidence conclusively establishes a vital fact when the evidence is such that reasonable people could not disagree in their conclusions. *See City of Keller,* 168 S.W.3d at 814–17. In conducting a legal sufficiency review, we must consider the evidence in the light most favorable to the verdict and indulge every reasonable inference that would support it. *See Bustamante*, 529 S.W.3d at 456; *City of Keller,* 168 S.W.3d at 822.

Under a factual sufficiency review, we consider and weigh all of the evidence and set aside the judgment below only if it is so against the great weight and preponderance of the evidence so as to be wrong and unjust. *See City of Keller,* 168 S.W.3d at 826.

## B. Analysis

Appellants argue that appellees' evidence was so unreliable as to constitute no evidence. At the trial, appellants presented evidence that Jane believed she was divorced; however, appellants did not produce the divorce certificate itself. On the other hand, appellees produced evidence demonstrating that there was no record of a divorce between Jane and Bowerman anywhere in California or Nevada. Additionally, the appellees' expert genealogist, King, testified that it was impossible "to obtain a legal divorce in California in 1963 in less than twelve months." Thus, appellees alleged that it was not possible for Bowerman to have legally divorced Jane in between the time he left his marital home with Jane in 1963 and the date of his marriage to Claralyn in August of the same year.

Viewing the evidence in the light most favorable to the verdict, we conclude that appellees presented legally sufficient evidence to support the finding that there was no divorce between Robert and Jane. *See Bustamante*, 529 S.W.3d at 456. Likewise,

14

because the judgment was not so against the great weight and preponderance of the evidence so as to be wrong and unjust, we conclude that the evidence was factually sufficient. *See Bustamante*, 529 S.W.3d at 456. We overrule appellants' eighth issue.

## IX. ADMISSION & EXCLUSION OF EVIDENCE

In their ninth issue, appellants argue that the trial court improperly excluded portions of Jane's affidavit. In their tenth issue, appellants argue that the trial court erred by failing to exclude improperly disclosed witnesses and evidence.

### A. Standard of Review & Applicable Law

The admission and exclusion of evidence is committed to the trial court's sound discretion. *See City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995). "The trial court abuses its discretion if it acts unreasonably or arbitrarily or without reference to any guiding rules or principles." *Walker v. Gutierrez,* 111 S.W.3d 56, 62 (Tex. 2003). To obtain reversal of a judgment based on error in the admission or exclusion of evidence, an appellant must show that the trial court's ruling was in error and that the error was calculated to cause, and probably did cause, the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1); *Alvarado*, 897 S.W.2d at 753.

### B. Analysis

#### 1. Exclusion of Portions of Jane's Affidavit

In their ninth issue, appellants specifically object to the trial court's exclusion of the following portion of Jane's affidavit, which explained why she did not have any physical divorce papers:

> In view of the length of time that has passed since my marriage to Robert Bowerman, being over 48 years ago, and the fact that I have moved a number of times since 1963, I have no idea what happened to any of our divorce papers, but I clearly remember signing the documents so that we

15

> could be divorced, and I clearly remember Robert Bowerman later giving me a copy of the final papers that said we were divorced.

Appellees argue that the trial court did not err in excluding this portion of Jane's affidavit because it was misleading and would have only confused the jury. *See* TEX. R. EVID. 403. King testified that during this time in California, both parties to a divorce had to personally appear in court, establish one of seven grounds justifying divorce, and corroborate their evidence with an independent witness. Thus, appellees argue that Jane's statement that she signed a paper that she thought was a divorce decree constituted no evidence that she and Robert were actually divorced. *See id.* Additionally, according to the appellees, it would have been improper to allow the appellants to rely upon parol evidence of a divorce decree as evidence that Jane and Robert were divorced. *See id.* R. 1002 ("An original writing, recording, or photograph is required in order to prove its content.").

Even if we assume the trial court did err in excluding that portion of Jane's affidavit, we cannot conclude such exclusion prejudiced appellants when similar testimony was presented to the jury through Richard Bowerman. The jury was ultimately made aware that Jane was allegedly given divorce papers from Robert and yet the jury chose to find in favor of appellees. Therefore, we cannot conclude that the exclusion of this portion of the affidavit probably caused the rendition of an improper judgment. *See* TEX. R. APP. P. 44.1(a)(1); *Alvarado*, 897 S.W.2d at 753. We overrule appellants' ninth issue.

## 2. Admission of Rebuttal Witnesses and Evidence

Concerning their tenth issue, appellants contend that the trial court erred by admitting untimely disclosed evidence. *See* TEX. R. CIV. P. 193.6(a). The discovery deadline in this case was March 16, 2018. On January 12, 2018, appellants requested that appellees identify all of their witnesses and rebuttal witnesses that they expected to

16

call at trial. In response, appellees listed twelve witnesses and zero rebuttal witnesses. On March 8, 2018, appellees' counsel sent a letter to appellants stating that he would need to call additional witnesses because of new facts and hypotheticals raised by the appellants at the deposition of appellees' investigator that was conducted on March 6, 2018. Appellees' counsel specifically referenced the following four witnesses he would need to call:

1. Someone who has searched Mexico divorce records. Henry _____ (I cannot recall his last name, I have emailed a request to get it).

2. Someone to image and process the San Mateo County Divorce records. I am in the process [of] engaging Casso Land & Imaging Services.

3. Someone who has searched Nevada divorce records in all 16 counties. I do not have a name yet.

4. Someone to testify to searches of historical newspapers. I have not retained anyone yet.

Appellants filed a motion to exclude the allegedly untimely disclosed witnesses and evidence. The trial court heard and denied the motion on May 17, 2018.

According to appellants, none of these four witnesses were timely disclosed in response to interrogatories. *See* TEX. R. CIV. P. 193.5(b) ("An amended or supplemental response must be made reasonably promptly after the party discovers the necessity for such a response."). Additionally, appellants assert that appellees placed documents on their exhibit list that could have only been produced by these witnesses after the close of discovery. Specifically, appellants contend that exhibits 16-1 through 16-5 and 80 through 144 were not gathered until after the close of discovery and were produced less than thirty days before trial. *See id.* ("Except as otherwise provided by these rules, it is presumed that an amended or supplemental response made less than 30 days before

17

trial was not made reasonably promptly."). However, the appellees assert that they responded in a timely manner to the new theories raised by appellants. Additionally, appellees claim that the evidence in question did not probably cause the rendition of an improper judgment. We agree with appellees.

According to appellants' pleadings and responses to interrogatories, Robert divorced Jane in 1963 in San Mateo County, California. However, near the end of the discovery deadline, appellants started suggesting that the divorce did not necessarily occur in San Mateo County and that it did not necessarily occur in 1963; in other words, appellants, without changing their responses to the interrogatories, began asserting that the divorce could have happened anywhere at any time. Within a few days, the appellees responded to the new theories and offered to produce all of the new rebuttal witnesses prior to the discovery deadline. Appellants chose to depose one of the witnesses before the close of the discovery period, but they waited until after the deadline to depose the other witnesses.

Additionally, we note that appellants included the allegedly improper rebuttal evidence on their own exhibits list and produced new trial exhibits using the allegedly improper rebuttal evidence of which they complain. *See Sanchez v. Balderrama*, 546 S.W.3d 230, 235 (Tex. App.—El Paso 2017, no pet.) ("[A] party on appeal should not be heard to complain of the admission of improper evidence offered by the other side, when he, himself, introduced the same evidence or evidence of a similar character."); *see also Gary Zars Holding, LLC v. Wilder*, No. 13-18-00142-CV, 2018 WL 3062587, at *2 (Tex. App.—Corpus Christi–Edinburg June 21, 2018, no pet.) (mem. op.) (same).

Presuming that appellees failed to timely disclose the rebuttal witnesses and exhibits, *see* TEX. R. CIV. P. 193.5(b), we nevertheless conclude that appellees met their burden to establish (1) there was good cause for that failure, and (2) the failure did not unfairly surprise or prejudice appellants. *See* TEX. R. CIV. P. 193.6(a). Therefore, we conclude that the trial court did not abuse its discretion in admitting the rebuttal evidence. *See id.*; *Alvarado*, 897 S.W.2d at 753. We overrule appellants' tenth issue.

## X. LACHES

In their eleventh issue, appellants argue that the relief sought by appellees is barred by laches.

### A. Applicable Law

"Laches is an equitable remedy that prevents a plaintiff from asserting a claim due to a lapse of time." *Brewer v. Nationsbank of Tex., N.A.*, 28 S.W.3d 801, 804 (Tex. App.—Corpus Christi–Edinburg 2000, no pet.). To prevail, the party asserting laches must establish two elements: "(1) there was an unreasonable delay by the other party in asserting legal or equitable rights, and (2) the party asserting laches made a good faith change in position to his detriment because of the delay." *Id.* Laches is generally only available in suits that are "strictly in equity or in actions at law that involve claims of an essentially equitable character." *Id.*; *see Reyna v. Attorney Gen. of Tex.*, 863 S.W.2d 558, 559 (Tex. App.—Fort Worth 1993, no writ) ("Generally, laches is not a defense against a claim to enforce a statutory right.").

### B. Analysis

Appellants pleaded the affirmative defense of laches and requested a jury instruction on laches. However, the trial court refused to to instruct the jury on laches.

19

Appellants argue that they satisfied both elements of laches because there was an unreasonable delay in bringing the claim to have the marriage declared void and the appellants underwent a detrimental change in position. *See id.* Claralyn died in 1972. But the present suit does not involve a claim of equitable nature; instead, appellees brought this suit to enforce their statutory rights to declare the heirs of Claralyn. *See* TEX. EST. CODE ANN. § 202.0025. As such, laches is unavailable in this case. *See Brewer*, 28 S.W.3d at 804; *Reyna*, 863 S.W.2d at 559. Therefore, we conclude that the trial court did not abuse its discretion in deciding not to apply or instruct the jury on laches. *See Hawley*, 284 S.W.3d at 856. We overrule appellants' eleventh issue.

## XI. CONCLUSION

We affirm the judgment of the trial court.

NORA L. LONGORIA
Justice

Delivered and filed the
22nd day of October, 2020.